WILLIAM J. WYLIE, Trustee, *et al.*, Plaintiffs-Appellants, *v.* AMALGAMATED TRUST & SAVINGS BANK, Trustee, Defendant-Appellee.

First District (5th Division)    No. 78-938

Opinion filed June 29, 1979.

Michael J. Guinan, Ltd., of Chicago, for appellants.

Ash, Anos, Harris & Freedman, of Chicago (George J. Anos and Lawrence M. Freedman, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs appeal the order of the circuit court granting defendant's motion for summary judgment in an action seeking an extension of a redemption period on foreclosed property and an injunction. They contend that the trial court erred when: (1) it granted the motion for summary judgment because a genuine issue of material fact existed as to whether they were misled into believing that an extension of the redemption period would be granted; and (2) it restricted and terminated discovery by plaintiffs. We affirm on both points raised.

Plaintiffs' verified complaint alleges the following facts: In 1973, Lee and Barbara Romano purchased certain property in Barrington Hills from Mrs. Fern D. Buehler, who was also the purchase money mortgagee. The purchase price of the property, used as the family homestead, was $2,000,000, of which the Romanos paid $1,500,000. In 1976, due to the Romanos' default in paying the remaining amount, Buehler instituted default proceedings on the property. On April 4, 1977, a decree of foreclosure was entered, setting November 14 as the last day for redemption of the property. On May 12, the property was sold at a sheriff's sale to Buehler and a certificate of sale was issued to her. She paid $663,770 for the property, leaving a deficiency of only four cents on the amount owed by the Romanos. After the purchase, Buehler assured the Romanos on a number of occasions that "she would cooperate with them in their efforts to redeem their equity" and would not sell the certificate to any third party. On September 16, Buehler's attorney notified the Romanos that the certificate had been sold to Henry Frank. Buehler subsequently informed the Romanos that the sale had taken place without her knowledge, but that her attorney was authorized to make the sale. She

also said that she wanted to reacquire the certificate, but that her attorney had counseled her against this.

In late October, the Romanos took preliminary steps to obtain financing to redeem the certificate. They ceased their efforts after Donald Conley, one of their attorneys, spoke with Frank on November 8 and advised them that Frank "appeared to be amenable" to going along with an extension of the redemption period. Conley told them that Frank had suggested a 90-day extension period.

From November 8 to November 10, William Wylie, a trustee under a trust agreement for the benefit of the Romanos, attempted to negotiate the terms of an extension. In Wylie's affidavit, which was attached to plaintiffs' complaint, he stated that on November 8, Frank told him that he would have to discuss the extension with a man who was part of the group which had purchased the certificate. Frank indicated that the man was in California at the time and could not be reached until later in the afternoon. Frank asked Wylie to call back later. Wylie called Frank on the following day but Frank had not been able to reach the man. On November 10, Wylie again called Frank and made an appointment to meet with him about the extension. At the meeting, Frank told Wylie that the man in California said that he was not too interested in an extension because he wanted to move onto the property. Nonetheless, Frank told Wylie that "they" would be willing to entertain any proposal he might make. Wylie then offered $50,000 for an extension and Frank told him that he was not sure that would be enough. Wylie then told Frank that Mr. Romano would like to talk to him. Frank told Wylie to have Romano call after 4 p.m., but when he did call, Frank already had left. Frank never contacted Wylie concerning the sufficiency of the $50,000 offer.

Plaintiffs' complaint further alleges that after receiving word on November 10 that Frank would not grant an extension, the Romanos again sought financing. They were not able to obtain financing on November 11 because it was a bank holiday or on November 12 or November 13 because they were weekend days. Consequently, financing was not obtained before November 14, the deadline for redemption.

On November 15, the Romanos filed a petition in Cause No. 76 CH 6270 requesting an extension of two weeks on the redemption period. Frank was named as defendant in the case. Additionally, they petitioned for emergency injunctive relief precluding further transfers of title to third parties or the commencement of legal proceedings to remove the Romano family from their property. On November 16, the trial court heard the Romanos' request for emergency relief. On that day, Frank informed plaintiffs for the first time that he had transferred title to Amalgamated Trust & Savings Bank (hereinafter Amalgamated Trust),

as trustee under Trust No. 33276, and that he was acting as agent for the beneficiaries of the trust. The court advised the plaintiffs to proceed against Amalgamated Trust in a separate action. Once they had done so, the court consolidated that action with Cause No. 76 CH 6270.

Both Frank and Amalgamated Trust filed answers to plaintiffs' complaint. Neither answer admitted nor denied many of the facts contained in plaintiffs' complaint. They both alleged that Frank's transfer of title to Amalgamated Trust had been a matter of public record ever since September 21, 1977. Although they both admitted that Frank had talked to Conley on November 8 and to Wylie during the period of November 8 to November 10, they denied that he had ever agreed to an extension or had ever given any cause to believe that an extension was forthcoming.

On November 21, the trial court denied plaintiffs' request for a temporary restraining order. On December 5, plaintiffs moved for and were granted a voluntary nonsuit of Frank.

Also on December 5, Amalgamated Trust moved for a summary judgment and filed memoranda and an attached copy of a letter and an affidavit in support of its motion. The letter was the one sent to plaintiffs, notifying them of Frank's purchase of the certificate of sale. The letter stated that the sale was subject to their right of redemption. Amalgamated Trust also filed the affidavit of Frank. Frank's affidavit indicated that he had talked to Conley on November 8, but that he had not agreed to any extension. He told Conley that other parties were involved and that they would have to make any decision regarding an extension. He said that he did not know if the other parties would be amenable to an extension. When Conley suggested a 30-day extension, he told him that he did not think that the other parties would agree. When Conley suggested consideration for an extension, Frank said that he would ask the other parties. Frank said that he never suggested or discussed a 90-day extension with Conley. When he spoke to Wylie on November 10, he did not tell him that one of the investors wished to move onto the property. Frank agreed to transmit the $50,000 offer to the title holders, but he told Wylie that he was positive that they were not interested in an extension and that the offer would almost certainly be unacceptable. Wylie then told Frank that he did not wish to transmit this final rejection to Mr. Romano without Mr. Romano having an opportunity to talk to Frank. Although Frank was reluctant to talk with Romano, he agreed to await his phone call until after 4 p.m. Frank said that Romano never called.

On March 7, 1978, the trial court sustained Amalgamated Trust's motion for summary judgment. The court specifically found that neither Amalgamated Trust nor its agents took advantage of or misled plaintiffs.

The court also denied plaintiffs' petition for injunctive relief "for want of equity."

OPINION

Plaintiffs contend that there was a genuine issue as to whether Buehler and Frank fraudulently misled them into believing that they would be allowed additional time to redeem their property. They argue that had they not been "lulled into a false sense of security" by Buehler and Frank, they would have been able to obtain the funds necessary for redemption by November 14. They also argue that it would be inequitable to allow defendant to reap such a windfall profit as would result if we were to affirm. We reject this contention because the record does not reveal any fraudulent misrepresentations that there would be an extension of the statutory redemption period.

■■ Generally, since the right of redemption is purely statutory, it may only be exercised within the time period provided by the statute. (*Skach v. Sykora* (1955), 6 Ill. 2d 215, 127 N.E.2d 453; *Glen Ellyn Savings & Loan Association v. State Bank of Geneva* (1978), 65 Ill. App. 3d 916, 382 N.E.2d 1267.) Nonetheless, a court of equity may allow redemption after the statutory time period has expired if it can be shown either that the purchaser of the property has prevented redemption by fraud, oppression, or some other improper act (*Federal Land Bank v. Droste* (1975), 26 Ill. App. 3d 256, 325 N.E.2d 37) or that some public official has prevented redemption by mistake, fraud, or some improper act. (*Skach v. Sykora* (1955), 6 Ill. 2d 215, 127 N.E.2d 453.) Although inadequacy of price alone will not justify a court's allowing an extension of the redemption period, an extension will be appropriate where inadequacy of price is coupled with circumstances of unfairness. *Block v. Hooper* (1925), 318 Ill. 182, 149 N.E. 21.

■■ It is undisputed that plaintiffs failed to redeem within the statutory time period. Plaintiffs claim, however, that an extension should be allowed on equitable grounds because both Buehler and Frank made statements which misled them into believing an extension would be granted. Plaintiffs alleged that Buehler assured them on a number of occasions that "she would cooperate with them in their efforts to redeem their equity" and would not sell the certificate to anyone else. Even assuming these assurances to be true, they do not amount to a promise that plaintiffs would be granted an extension of the redemption period. Buehler never actually agreed to an ·extension; she only agreed to cooperate with them in their efforts. Her assurance is too vague to be considered a definite promise for an extension. Furthermore, plaintiffs should have been aware by September 16, 1977, that Buehler's assurance

was meaningless. They alleged that on that date they received a letter from Buehler's attorney notifying them that the certificate of sale had been sold to Frank. Also, that transfer became a matter of public record on September 21. Despite this knowledge, plaintiffs did not seek financing until late October. On this record, we cannot say that equity requires an extension because of the alleged statements of Buehler.

Frank's statements also do not amount to promises of an extension. Plaintiffs alleged that Conley, their attorney, told them that he had spoken to Frank on November 8 and that Frank "appeared to be amenable" to going along with an extension. They also alleged that Conley had told them that Frank had suggested a 90-day extension. They offered the affidavit of Wylie, the trustee, as evidence of Frank's agreement to extend the redemption period. In the affidavit, Wylie indicated that when he first broached the subject of an extension, Frank told him that he would have to contact one of the persons who had purchased the certificate. Later, Frank told Wylie that the person he had contacted was not too interested in an extension because he wanted to move onto the property, but that "they" would be willing to entertain any proposal he might make. Wylie then made a proposal and Frank told him that he did not know if it was sufficient. Frank then agreed to take a call from Romano, but when Romano called he was not available.

■■■ None of these allegations and statements contained in the affidavit create a genuine issue as to whether Frank misled plaintiffs into believing that an extension would be granted. The allegation that Frank "appeared to be amenable" to an extension is too vague. Also, this allegation was contradicted by Frank's affidavit filed in support of Amalgamated Trust's motion for summary judgment. Plaintiffs did not file any counteraffidavits and thus, the material facts stated in Frank's affidavit must be accepted as true. (*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468.) Frank's alleged suggestion of a 90-day extension period also was contradicted by Frank's affidavit and thus, Frank's statement in the affidavit is accepted as true. Frank's alleged statements to Wylie do not contain any promises or assurances of an extension. Frank informed Wylie that the decision to extend was not his, but was the decision of those who had purchased the certificate. He never told Wylie that they had agreed to an extension and, in fact, his uncontroverted affidavit indicates that he told Wylie that he was positive that they were not interested in an extension. On this record, we cannot say that equity requires an extension.

■■ Plaintiffs' property, which they claim to be now worth $3,000,000, was sold to Buehler for a seemingly inadequate price. Yet, absent any irregularity in the sale or in some action of the purchaser or a public official, inadequacy of price alone will not justify an extension. (See *Block v. Hooper* (1925), 318 Ill. 182, 149 N.E. 21.) Plaintiffs have not suggested

any irregularity which would justify an extension. The record merely discloses that plaintiffs did not seek financing until a late date and did not contact Frank until almost two months after they had received word that he had purchased the certificate of sale and within seven days of November 14. Their failure to attempt to secure financing at an earlier date and their late contact with Frank are not satisfactorily explained. Without a satisfactory explanation, the record merely indicates that plaintiffs had until November 14 to redeem and failed to redeem their property. There is no allegation that they either tendered payment before November 14 or deposited any funds with this court after November 14. Absent a legally cognizable excuse for their failure to redeem by November 14, the trial court's decision must stand.

Plaintiffs' other contention is that the trial court committed reversible error when it refused to permit plaintiffs to depose Amalgamated Trust's trust officer and when it limited the discovery deposition of Henry Frank. On December 8, 1977, the trial court suspended the deposition of the trust officer until further notice. On December 21, the court ordered that the deposition of Frank be limited to questions covering the time period from September 16 to November 10. Plaintiffs wanted to depose the trust officer for the purpose of obtaining the names of the beneficiaries. They claimed that the names were important because the beneficiaries were necessary parties as owners of the subject property and because the beneficiaries might have knowledge of facts relevant to the present suit. They wanted to question Frank about his conversations before September 16 and after November 10 because the conversations "could very well shed more light on and reveal the full truth about the transactions which are the subject of this litigation."

■■ We conclude that the trial court did not abuse its discretion in thus restricting discovery. The names of the beneficiaries could have been obtained from Frank and the information which plaintiffs hoped to obtain from the beneficiaries and from Frank's conversations before September 16 and after November 10 were beyond the scope of the issues created by the pleadings. That information had no bearing on whether Buehler or Frank had misled plaintiffs into believing that the redemption period would be extended.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

LORENZ and MEJDA, JJ., concur.