914 P.2d 1036

**Robert Hanford DALTON,**
**Petitioner–Appellant,**

v.

**FRANKEN CONSTRUCTION COMPA-**
**NIES, INC., Respondent–Appellee.**

**No. 16475.**

Court of Appeals of New Mexico.

March 11, 1996.

540

Eric M. Sommer, Sommer, Fox, Udall, Othmer, Hardwick & Wise, P.A., Santa Fe, for Appellant.

Danelle J. Smith, Las Vegas, for Appellee.

## OPINION

PICKARD, Judge.

1. Petitioner, Robert Hanford Dalton (Dalton), appeals the district court's determination that he did not timely exercise his statutory right of redemption of a property which had been sold at a judicial sale. Dalton argues that he substantially complied with the time requirements of NMSA 1978, Section 39–5–18(A) (Repl.Pamp.1991) to effect a redemption of the property. Dalton further argues that the equities of the case are such that the district court abused its discretion when it denied Dalton's petition for redemption. We affirm the decision of the district court.

### FACTS

2. Dalton filed for bankruptcy on December 8, 1992. This stayed a foreclosure action which had been initiated against five properties owned by Dalton. The stay was lifted on March 2, 1994, and the properties were sold as separate parcels at a foreclosure sale on April 7, 1994. Each parcel was sold subject to Dalton's right of redemption. *See* § 39–5–18. However, because Dalton was a debtor in a Chapter 7 bankruptcy proceeding, the right of redemption was owned and controlled as an asset of the bankruptcy estate by the bankruptcy trustee (the Trustee). Dalton made an oral request after the April 7 sale that the Trustee abandon the right of redemption as an asset of the bankruptcy estate. The Trustee filed a notice of abandonment on June 2, 1994, which allowed Dalton to pursue redemption on his own behalf.

3. The Special Master's sale of April 7, 1994, was confirmed on April 12, 1994. Pursuant to agreement, Dalton had a two-month right of redemption. *See* NMSA 1978, § 39–5–19 (Repl.Pamp.1991) (redemption period may be shortened by prior agreement). The last day on which Dalton could redeem the properties was Monday, June 13, 1994. Four of the five properties that had been sold were redeemed by Dalton within the redemption period and are not the subject of this dispute. The fifth property (the property), the subject of this case, was purchased by Respondent Franken Construction Companies, Inc. (Franken).

4. Dalton was not able to obtain a loan commitment for the amount necessary to redeem the property until the afternoon of June 7, 1994, when the Bank of Las Vegas (the Bank) conditionally approved a loan to cover the price of redemption. In exchange for the loan commitment, the Bank wanted assurances that the Bank would have a first and superior lien on the property and that the funds would be returned if the redemption bids were unsuccessful. Therefore, the loan proceeds were delivered to Dalton in a cashier's check with three payees: the district court clerk, Dalton, and the Bank itself. The check was delivered to the clerk's office on June 7, 1994, and held for deposit to the clerk's trust account on June 8, 1994.

5. On June 9, 1994, the Bank received a title insurance commitment which ensured that the Bank would be the first and superior lienholder on the property. However, the district judge was out of town, so the Bank's second concern—that the funds would be

returned if the redemption was not approved—remained unsatisfied. When the district court clerk deposited the check, the Bank refused to endorse its own cashier's check. Thus, it could not be deposited into a trust account that the clerk opened in another bank and identified as proceeds for the redemption.

6. The district judge returned from out of town on June 13, 1994—the last day of Dalton's redemption period. A Bank official contacted the judge regarding the assurances the Bank needed before it would endorse the check for deposit. The judge told the Bank to contact an attorney because it would not be proper for the judge to give any oral assurances or to prepare any written documents to that effect. Dalton's counsel, who did not practice in Las Vegas, faxed a motion and an order to the district court that afternoon. The documents were not filed, and the judge did not sign the order, because of a policy against filing or signing faxed copies. This policy was communicated to Dalton's attorney on June 13. The original motion and order were delivered to the court on June 14; the motion was filed and the judge signed and filed the order. The cashier's check was then redeposited and processed. The funds for the redemption were transferred into the clerk's trust account on June 17, 1994, four days after the June 13, 1994 deadline.

7. The district court concluded that Dalton "failed to timely exercise the right of redemption as required by law by failing to timely deposit the cash sum of $140,000.00 with the Clerk of the District Court." The district court reasoned that because the Bank refused to endorse the cashier's check, the check was not negotiable as cash and was therefore not in compliance with the statutory requirement that cash be deposited to effect a redemption. *See* § 39–5–18(A)(2). The district court refused to find or conclude that the equities favored Dalton.

*DISCUSSION*

1. *SUBSTANTIAL COMPLIANCE*

■ 8. Dalton argues that he substantially complied with Section 39–5–18(A). In his requested findings of fact and conclusions of law, Dalton represents that the only reason

that the Bank's requirement for assurance regarding the return of the funds was not satisfied on time was because the district judge was out of town. When the judge returned, he indicated that an order addressing the Bank's concerns would have to be prepared for his signature. Dalton's counsel faxed a prepared order to the judge's office. Dalton's substantial compliance argument is premised on his view that the judge indicated to him that the judge would sign the original order when he received it. However, the judge refused Dalton's requested finding to this effect. The original order was received and signed by the judge on June 14, 1994, one day after the statutory period had expired.

9. Dalton contends that we should take a liberal view of his efforts to obtain the necessary funding to redeem the property. He contends that our decision in *Western Bank of Las Cruces v. Malooly*, 119 N.M. 743, 895 P.2d 265 (Ct.App.1995), expresses a public policy in favor of redemption. That is a misreading of *Malooly*. What we said there was that it would violate public policy "to prevent redemption that is in accordance with the statute." *Id.* at 749, 895 P.2d at 271. In other words, the statute establishes public policy, and the courts advance that policy by enforcing the statute. Nevertheless, Dalton is correct that he may prevail if he establishes substantial compliance with the statutory requirements. *See Lane v. Lane*, 121 N.M. 414, 419, 912 P.2d 290, 295 (App.1996), *cert. denied*, 121 N.M. 375, 911 P.2d 883 (1996). However, for the following reasons, Dalton's efforts did not rise to the level of substantial compliance.

■ 10. Dalton contends that once the Bank's concerns were addressed by the judge's oral order, for all practical purposes the terms of the statute had been met. Only the "technicality" of release of the funds remained. However, Dalton misconstrues both the facts found by the district court and the statute. The district judge refused Dalton's requested finding to the effect that he had told Dalton that he would sign the order. *See Gallegos v. Wilkerson*, 79 N.M. 549, 551, 445 P.2d 970, 972 (1968) (refusal to make

finding on a material issue is tantamount to ruling against the party with the burden of proof).

■ 11. As for the statute, it provides in pertinent part:

After sale of any real estate pursuant to [a] judgment or decree of any court, the real estate may be redeemed by the former defendant owner....

. . . .

2. by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount [paid for the property at the foreclosure sale with ten percent interest per year and payment of all taxes, interest, and penalties] *in cash* in the office of the clerk of the district court....

Section 39–5–18(A) (emphasis added). We interpret statutes by giving the words of the statute their ordinary, everyday meaning, *Western Bank of Las Cruces,* 119 N.M. at 746, 895 P.2d at 268, unless we discern clear and express legislative intent to the contrary, *Id.* Section 39–5–18 clearly states that persons seeking to redeem their property must deposit cash with the clerk of the district court. We see no reason to deviate as far from the express language of the statute in the instant case as Dalton's argument suggests.

■ 12. Although we would agree that delivery to the court of a fully negotiable cashier's check would substantially comply with the statutory requirement of cash, the district court found that Dalton had not fulfilled even that requirement. The cashier's check could be negotiated only after endorsement by all three payees. But the Bank refused to endorse the check by June 13 and did not advise the court clerk until June 16 that the check would clear. Simply put, cash or its substantial equivalent was not available to repay Franken on June 13, 1994. Just as a personal check will not satisfy the statute even though there are sufficient funds in the account on which the check is drawn to cover the check, *see Weiner v. Eder,* 22 Ill.2d 408, 176 N.E.2d 777 (1961), an unendorsed cashier's check will not satisfy the statute, even

though future endorsement may be predictable.

13. Dalton relies on the Utah case of *United States v. Loosley,* 551 P.2d 506 (Utah 1976), to support his argument that he substantially complied with the statute and is entitled to redeem the property. *Loosley* involved a tender of the correct amount due for the redemption one day before the redemption period expired. *Id.* at 508. The tender of payment was refused because payment was tendered without the judgment and affidavit of lien attached, as required by statute, and the payment was allegedly delivered to the wrong person. *Id.* at 507. The Utah Supreme Court declared that the mortgagor had acted in good faith and in substantial compliance with the redemption statute and was entitled to redeem. *Id.* at 508. The Utah court was persuaded by the fact that the foreclosure purchasers had waived their right to strict compliance by not objecting at a time when the redemptioners could have cured the defects. *Id.*

■ 14. In contrast, in this case, Dalton's failure to timely tender the required payment in cash goes to the core of his obligation under the statute. It was not a timely tender of a cash payment as required by the statute. Dalton's failure to deposit cash with the district court clerk was more than merely a technical deficiency. *See Huston v. Lewis,* 818 P.2d 531, 536 n. 24 (Utah 1991) (characterizing *Loosley* as involving waiver of technical deficiencies). Nor is this case like *Advance–Rumely Thresher Co. v. Judd,* 104 Kan. 757, 180 P. 763 (1919), in which there was a slight deficiency in the amount tendered. *See id.* 180 P. at 765. Here, there was in effect no cash tender of most of the amount due. The redemption attempt was therefore not in compliance with the terms of Section 39–5–18(A)(2).

2. *EQUITY*

■ 15. We consider next whether the district court abused its discretion when it declared that Dalton's redemption bid was unsuccessful under the circumstances of this case. Notwithstanding Dalton's lack of substantial compliance with the requirements of the redemption statute, Dalton contends that

the district court erred in failing to apply equitable principles when it declined to find that cash was available as of June 13, 1994.

16. We disagree. In *Plaza National Bank v. Valdez,* 106 N.M. 464, 466, 745 P.2d 372, 374 (1987), our Supreme Court stated that equitable relief from the time limitations of the redemption statute would be entertained only upon "some showing of wrongful conduct on the part of the person against whom relief is sought." Here, there is not even an assertion of wrongful conduct by Franken. Even if there may be equitable grounds for relief other than those recognized in *Plaza National,* the facts here would certainly fall short.

17. The chief reason for denying equitable relief to Dalton is that he waited too long to take the necessary action. We first note that Dalton did not make a written request to the Trustee that the Trustee abandon the right of redemption. Second, Dalton's efforts to redeem the property did not begin until after the Trustee had abandoned the right of redemption as an asset of the bankruptcy estate on June 2, 1994. Evidence was adduced at trial that Dalton received word several days before the redemption rights were abandoned that the Trustee was likely to abandon these rights, and nothing would have prevented Dalton from inquiring about bank financing even earlier than that. Yet Dalton waited until after the Trustee had filed the notice of abandonment to begin to take the necessary steps to effectuate a redemption.

18. In addition, Dalton's arguments that factors beyond his control prevented him from providing cash by June 13, 1994, are not as persuasive as Dalton's recitation of the facts would seem to indicate. When the Trustee abandoned the right of redemption on June 2, 1994, Dalton knew that he was beginning the process of redemption late in the game. His margin for error with regard to procedural matters and processing delays was slim to none. Nevertheless, he allowed minor procedural matters to go unchecked, which contributed to the delay in obtaining and processing the necessary funds.

19. We do not agree that the equities of this case required the district court to grant the untimely redemption on grounds of fairness. As our Supreme Court said in *Richardson v. Pacheco,* 35 N.M. 243, 245, 294 P. 328, 329 (1930):

> the statute gives the mortgagor nine months in which to recover his property.... He who waits until the last day to seek out the purchaser takes the risk of missing him. It is effective action, not good intentions, that the statute calls for.

*CONCLUSION*

20. The decision of the district court is affirmed.

21. **IT IS SO ORDERED.**

HARTZ and BUSTAMANTE, JJ., concur.