2004-NMCA-040

88 P.3d 881

**Peter Mack BROWN, Petitioner–Appellant,**

v.

**C.B. TRUJILLO, Respondent–Appellee.**

**No. 23,529.**

Court of Appeals of New Mexico.

Jan. 28, 2004.

Certiorari Denied, No. 28,545, April 1, 2004.

Jane Bloom Yohalem, Santa Fe, for Appellant.

Jacob D. Caldwell, Stephen Natelson, Natelson Law Firm, Taos, for Appellee.

*OPINION*

PICKARD, J.

{1}  Petitioner (Debtor) appeals the trial court's grant of summary judgment, which dismissed his petition to redeem property sold under judgment or decree of foreclosure.  Debtor argues that the trial court erred in finding that he had not substantially complied with the redemption statute as a matter of law.  Debtor also contends that genuine issues of material fact exist to preclude the trial court's denial of an extension of the redemption period in equity, but we interpret his argument as raising the issue of law of whether, when viewing the facts in the light most favorable to Debtor, equity permits the trial court to grant an extension. Finally, Debtor asserts that Respondent (Purchaser) waived his right to strict compliance with the redemption statute by agreeing to issue a quitclaim deed in exchange for the redemption price.  We affirm.

## FACTS AND PROCEEDINGS

{2}  Debtor owned a tract of property in Tres Piedras, New Mexico, on which a predecessor to Chase Manhattan Bank (Chase) held a mortgage.  In June 2000, Chase began foreclosure proceedings that concluded with a foreclosure judgment against Debtor in November 2000.  At a sheriff's sale of the property on October 24, 2001, Purchaser acquired the property.  The order confirming the sale was not issued until December 21, 2001.

{3}  When the court entered the order confirming the sale, the time for Debtor to exercise his right to redemption commenced. *See* NMSA 1978, § 39-5-18 (1987).  Debtor's mortgage had shortened the redemption period to one month.  *See* NMSA 1978, § 39-5-19 (1965) (permitting the nine-month statutory period for redemption to be shortened by contract to not less than one month).  The parties operate under the assumption that the final day for redemption was January 20, 2002.  *But see U.S. Bank Nat'l Ass'n v. Martinez*, 2003–NMCA–151, ¶ 5, 134 N.M. 665, 81 P.3d 608 (holding that one-month period means a calendar month so that redemption period for a sale confirmed on December 21 would end on January 21).

{4}  Debtor made arrangements with Arriba Mortgage Company to secure private financing that would enable him to redeem the property.  Debtor worked with Taos Title Company (Taos Title), which contacted Purchaser.  According to Debtor, Purchaser agreed to come to a closing on January 11, 2002, where he would execute a quitclaim deed in exchange for the full amount required for redemption.  On January 11th, Purchaser did not come to the closing, although Debtor had deposited the funds in escrow with Taos Title.  On January 14th, a representative of Taos Title called Purchaser, and Purchaser denied having ever agreed to come to the closing and stated that he was unwilling to deal with Debtor.  The private lenders from whom Arriba Mortgage had secured financing would not agree to place their funds in the district court registry to effect redemption.  In the remaining six days before the expiration of the redemption peri-

od, Debtor was unable to find any alternative financing.

{5} On January 17, 2002, Debtor filed a petition to redeem property sold under judgment or decree of foreclosure (Petition). The Petition was not accompanied by the deposit of funds with the clerk of the district court, as prescribed by Section 39–5–18(A)(2). Instead, Debtor requested that the district court "waive any requirement of deposit of funds with the Court" because "all funds needed to satisfy the [Purchaser] have been available at Taos Title Company ... and cannot be released to [Purchaser] until he signs a QuitClaim deed to [Debtor]." Debtor attached an affidavit from the Special Master in the foreclosure case, which stated that the Special Master had informed Purchaser that the funds were available at Taos Title and that Purchaser had not completed the closing. The Petition also alleged intentional infliction of emotional distress, a claim that was dismissed by the trial court and is not at issue in this appeal.

{6} Purchaser answered that Debtor had failed to state a claim on which relief could be granted, and he counterclaimed for quiet title and declaratory judgment confirming the sale of the property. He also made a claim for unlawful detainer and rent, which was subsequently settled and is not at issue on appeal. Purchaser then moved for summary judgment, arguing that there was no genuine issue of material fact and that Debtor had failed to meet the statutory requirements for redemption as a matter of law. In response, Debtor put forth the arguments that he had substantially complied with the requirements of the redemption statute and that he was entitled to an extension of the redemption period in equity.

{7} After a hearing on July 22, 2002, the trial court issued an oral ruling granting summary judgment for Purchaser. The court noted that Debtor's petition was not filed with cash as required by the statute, that the money was no longer in escrow at Taos Title, and that none of Debtor's actions rose to the level of substantial compliance.

{8} Debtor moved for reconsideration and provided four additional affidavits to the court. First, an employee of Taos Title stated that all the arrangements had been made for the January 11th closing, that Purchaser had been notified, and that Purchaser "indicated that he was agreeable and would come" to the closing. Second, the private lenders with whom Arriba Mortgage had contracted for the funds stated that they "would not agree to place the funds in the District Court" when they learned that the closing had not been completed. Third, a representative of Arriba Mortgage stated that after the closing had fallen through, the private lenders had told him that "they did not want to have their money tied-up with the District Court pending the outcome of a legal dispute." Finally, Debtor explained that he "had great difficulty" obtaining financing for the redemption and that he "relied on [Taos Title's employee's] assurances that [Purchaser] was agreeable and would attend the closing, and did not make further efforts to find an alternative lender who would allow the money to be deposited in court." Purchaser's response included his own affidavit, stating that he had never agreed to come to the closing and had never agreed to sign a quitclaim deed.

{9} On August 26, 2002, Debtor placed the redemption amount into the court registry. That same day, the court heard Debtor's motion for reconsideration. The arguments in this hearing focused mostly on Debtor's request for an extension of the redemption period in equity. The trial court remained unconvinced. It stated that Debtor was not entitled to equitable relief because, even assuming Purchaser's misrepresentation as to the closing, Debtor still had the option of depositing the funds in the court registry before the redemption period expired. Finding that any factual issue pertaining to Purchaser's agreement to come to the closing was "peripheral," the trial court denied Debtor's motion for reconsideration of its summary judgment for Purchaser and entered its final order.

**DISCUSSION**

{10} "On appeal of an order granting summary judgment, the evidence is viewed in a light most favorable to the party opposing summary judgment, and the evidence is reviewed to determine whether there are dis-

puted material factual issues warranting trial on the merits." *Blackwood & Nichols Co. v. N.M. Taxation & Revenue Dep't,* 1998–NMCA–113, ¶ 5, 125 N.M. 576, 964 P.2d 137 (citation omitted). We review the issues de novo, considering the whole record. *Tempest Recovery Servs., Inc. v. Belone,* 2003–NMSC–019, ¶ 7, 134 N.M. 133, 74 P.3d 67.

### ISSUE ONE: Substantial Compliance

{11} Debtor's stated argument is that there is a genuine issue of material fact as to whether he substantially complied with the provisions of Section 39–5–18, which sets forth the procedures for redemption. We, however, view his argument as raising the question of law of whether, when viewed in the light most favorable to him, the trial court could find substantial compliance. Section 39–5–18 reads:

A. After sale of any real estate pursuant to any such judgment or decree of any court, the real estate may be redeemed by the former defendant owner of the real estate . . . :

(1) by paying to the purchaser, his personal representatives or assigns, at any time within nine months from the date of sale, the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or

(2) by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption and by making a deposit of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale.

{12} Debtor argues that the trial court misapplied the law by failing to consider statutory provisions permitting tender of the redemption amount directly to the purchaser and by "applying an unduly technical and rigid approach to substantial compliance." He also states that the trial court improperly decided that the disputed fact of Purchaser's agreement to come to the closing was not material to this issue. We disagree with Debtor's arguments.

{13} Substantial compliance is a doctrine of statutory interpretation that examines whether an actor follows a statute "sufficiently so as to carry out the intent for which the statute was adopted" and in a manner that "accomplishes the reasonable objectives of the statute." *Lane v. Lane,* 1996–NMCA–023, ¶ 17, 121 N.M. 414, 912 P.2d 290 (internal quotation marks and citation omitted). The doctrine is premised on the concept that the Legislature "cannot anticipate every contingency." *Id.* Our analysis examines the nature and purpose of the statute, and we examine the acts purporting to achieve compliance in light of "the purposes served by strict compliance with the letter of the statute." *Id.* ¶ 18.

{14} Redemption is a statutory right that our courts construe narrowly. *See Union Esperanza Mining Co. v. Shandon Mining Co.,* 18 N.M. 153, 165, 135 P. 78, 80 (1913) (characterizing redemption as "a statutory right that is not to be enlarged by judicial interpretation"); *see also* 30 Am. Jur.2d *Executions and Enforcement of Judgments* § 434 (1994) (stating that "the right of redemption is recognized as a substantive right to be exercised in strict compliance with statutory terms"). Originally, our redemption statute permitted only one course of action: payment of the redemption amount to the purchaser. NMSA 1915, § 4775 (1909). In the 1930 case of *Richardson v. Pacheco,* 35 N.M. 243, 244, 294 P. 328, 328 (1930), a debtor who could not find the purchaser in time to tender the redemption amount attempted to redeem the property by tendering cash to the clerk of the district court. Our Supreme Court rejected this effort, holding that the debtor could achieve redemption only by following the letter of the statute. *Id.* at 245, 294 P. at 329. In 1931, the Legislature amended the statute to per-

mit redemption through a cash deposit in the office of the clerk of the district court. 1931 N.M. Laws ch. 149, §§ 2, 4, 6.

{15} Our key case examining substantial compliance with the redemption statute is *Dalton v. Franken Construction Cos.*, 1996–NMCA–041, 121 N.M. 539, 914 P.2d 1036. In that case, the debtor tendered an unendorsed cashier's check to the district court on the last day of the redemption period, and the funds were not transferred into the court account until after the redemption period expired due to the judge's being out of town and the court's policy of not signing faxed orders. *Id.* ¶¶ 5–6. We held that the failure to tender cash or its equivalent to the court before the deadline was "more than merely a technical deficiency" and did not rise to the level of substantial compliance. *Id.* ¶ 14.

{16} Debtor argues that placing the redemption amount in escrow at Taos Title was the functional equivalent of paying Purchaser. We disagree. The difference between making money available to Purchaser upon his execution of a quitclaim deed at a closing at an escrow company and giving Purchaser cash in hand is apparent, and the difference is greater than the deviation from the standard procedure asserted in *Dalton*. In fact, such a conditional tender has been expressly rejected by our Supreme Court. *Moise v. Timm*, 33 N.M. 166, 167, 262 P. 535, 535 (1927) (holding that a conditional tender is not effective); *Nutter v. Occidental Life Ins. Co.*, 26 N.M. 140, 144, 189 P. 882, 883 (1920) (holding that tender conditioned on delivery of a deed is not effective); *Union Esperanza Mining Co.*, 18 N.M. at 165, 135 P. at 80 (holding that a tender on the condition that purchaser execute a deed and agree that nothing more is due is not effective).

{17} Debtor argues that those cases are no longer good law in light of NMSA 1978, § 39–5–23 (1931), which requires the purchaser to execute and record evidence of the redemption. Thus, Debtor argues that the quitclaim deed was nothing more than what Section 39–5–23 requires. That statute, however, does not indicate that a debtor or its financier can condition the payment to the purchaser required by Section 39–5–18(A)(1) upon Section 39–5–23's previous or contemporaneous satisfaction. Moreover, we do not know what problems might have erupted at the closing that caused the lenders in this case to make the availability of funds conditional or to refuse to deposit them with the court. As indicated above, we still believe that the deviation from statutory compliance is more significant than in *Dalton* and that *Moise* and the other cases remain good law under the facts of this case. By conditionally tendering money to Purchaser and then filing the Petition without a cash deposit with the trial court, Debtor did not substantially comply with either procedure the Legislature has created.

{18} We agree with Debtor that the redemption statute has not given the purchaser "any right to retain title to the property by turning down the debtor's cash payment." However, Debtor did not offer a "cash payment," but rather a conditional tender, which our case law has given a purchaser the option to refuse. Furthermore, our Legislature responded to the circumstance of purchaser unavailability in *Richardson* by creating an alternative process for the debtor, not by regulating the conduct of the purchaser. Thus, Debtor does not present us with a contingency that the Legislature has not anticipated, and we see no reason to deviate from the statute to this extent under these circumstances.

{19} Whether Purchaser's actions somehow induced Debtor to think his conditional tender would be accepted is an issue to be considered in equity, as we do below. In analyzing substantial compliance, we look to whether Debtor's actions fulfill the spirit of the redemption law. We cannot say that putting funds in escrow with a title company conditioned on the giving of a quitclaim deed rises to this level. Accordingly, we find no error in the trial court's rejection of Debtor's substantial compliance argument.

**ISSUE TWO: Extension of Redemption Period**

{20} Debtor contends that he is entitled to equitable relief if he can prove that Purchaser acted wrongfully by reneging on a promise to come to the January 11th closing. He argues that because a genuine issue of

material fact exists as to whether Purchaser agreed to come to the closing, there can be no summary judgment. Although we ordinarily review a trial court's decision to dismiss a debtor's request for an equitable extension of the redemption period for an abuse of discretion, *see Dalton,* 1996–NMCA–041, ¶ 15, 121 N.M. 539, 914 P.2d 1036, because the trial court's decision came in the context of summary judgment, we view the evidence in the light most favorable to the nonmoving party, *Blackwood & Nichols Co.,* 1998–NMCA–113, ¶ 5, 125 N.M. 576, 964 P.2d 137, to determine whether the trial court had discretion to exercise under the facts so viewed, *see United Props. Ltd. Co. v. Walgreen Props., Inc.,* 2003–NMCA–140, ¶¶ 6–7, 134 N.M. 725, 82 P.3d 535 [Vol. 42 SBB No. 52, page 11]. Thus, the issue is whether the trial court erred as a matter of law in holding that Debtor was not entitled to equitable relief, accepting as true Debtor's contentions that Purchaser made misrepresentations about his willingness to participate in the closing upon which Debtor relied. We hold that there was no error as a matter of law because Debtor's showing did not bring his case within any of the situations in which a trial court can exercise discretion.

■ {21}   In general, there are two situations in which a court will use its equitable powers to grant a debtor an extension of the redemption period. In the first type of situation, the debtor fulfills all of the requirements of the redemption statute, but redemption is not complete because of a clerical error or technical mix-up. *See First Fed. Sav. & Loan Ass'n v. McKain,* 5 Kan. App.2d 387, 617 P.2d 583, 585–86 (1980) (permitting an equitable extension when purchaser filed a voucher with the court increasing the redemption amount by $290.30 two days after debtor properly tendered payment to the court); *Loomis v. Nat'l Supply Co. of Kansas,* 99 Kan. 279, 161 P. 627, 628–29 (1916) (permitting an equitable extension when debtor properly tendered amount specified by the court clerk, but the clerk had misstated the rate of interest). In the present case, Debtor asserts no such mistake.

{22}   In the second type of situation, courts look for evidence of fraud, deceit, or collusion to justify the grant of a redemption period extension. *See* 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 443 (1994). In *Dalton,* we held that a trial court's exercise of its equitable discretion requires "some showing of wrongful conduct on the part of the person against whom relief is sought." 1996–NMCA–041, ¶ 16, 121 N.M. 539, 914 P.2d 1036 (internal quotation marks and citation omitted). We affirmed the trial court's rejection of the debtor's request for an equitable extension because the debtor had not alleged any wrongdoing by the purchaser. *Id.* To this extent, we agree with Debtor that, in this line of cases, a showing of wrongful conduct on the part of the purchaser is an "essential predicate" for the exercise of the court's discretion.

■ {23}   We also agree with Debtor that in purchaser-misconduct cases, the purchaser's wrongdoing need not rise to the level of illegality. In *Plaza National Bank v. Valdez,* 106 N.M. 464, 464–65, 745 P.2d 372, 372–73 (1987), the debtors had contacted the purchaser to confirm the amount necessary for redemption, and the purchaser sent a letter to the debtors' attorney specifying an amount. Then, ten days before the expiration of the redemption period, the purchaser paid off a secondary mortgage on the property, which effectively raised the amount necessary for redemption. *Id.* at 465, 745 P.2d at 373. The Court held that although the purchaser did not break any law, these actions "subjected the debtors to an extreme and unnecessary burden" and created an "unconscionable advantage" for the purchaser. *Id.* at 467, 745 P.2d at 375. Thus, the trial court had properly used its equitable power to grant the debtors' request for an extension of the redemption period.

{24}   However, insofar as Debtor argues that the trial court erred in basing its holding entirely on the issue of illegality, we do not agree that the trial court did so. Initially, we note that Debtor does not cite us to a particular point in the transcript that supports this notion. In our own review of the record, we see that the trial court only makes one mention of illegality, noting that

"nothing in the record ... indicates [Purchaser] bound himself legally or contractually to honor the redemption without some court procedure behind it." The trial court gave additional reasons for its decision to grant summary judgment, including its findings that the actions Debtor took did not substantially comply with the redemption statute, that the affidavits did not show that Purchaser's actions amounted to a promise to come to the closing that would merit Debtor's reliance, and that Debtor's proper course of action should have been to deposit money in the court registry.

{25} Furthermore, we do not agree that *Plaza National Bank* stands for the proposition that any and all misconduct on the part of a purchaser will merit an equitable extension of the redemption period. An examination of case law from other jurisdictions reveals that a court properly exercises its equitable discretion to extend the redemption period only when it would further the purposes of the redemption statute.

{26} Redemption statutes essentially protect debtors, and they do so in two basic ways. First, redemption statutes give debtors more time to secure financing, which protects debtors from disruption and allows individuals facing temporary hardships to recover and reclaim their properties. Marshall E. Tracht, *Renegotiation and Secured Credit: Explaining the Equity of Redemption*, 52 Vand. L.Rev. 599, 608 (1999). During this additional time, a debtor may also convince the lender that the default is not permanent and may renegotiate the terms of the loan. *Id.* at 630, 745 P.2d 372.

{27} Second, a redemption statute may increase the price of property at a foreclosure sale by creating the risk that a debtor will easily redeem his or her property from a purchaser who bids too low. *Id.* at 608, 745 P.2d 372. This protects the debtor, because when the foreclosure sale price is lower than the amount of the debt, the balance of the debt falls back to the debtor. Taking advantage of this provision, some lenders will purchase a property at a foreclosure sale for considerably less than the amount of the debt, thereby receiving the property for a minimal price while retaining the right to

recover the full amount of the debt. *Id.* at 606, 745 P.2d 372. In theory, redemption statutes help to prevent this type of dealing without restricting the actions of the lender or preventing full repayment. If a foreclosure price is inordinately low, the debtor can redeem and prevent the lender from gaining an unjust windfall, while still remaining obligated to pay the balance of his or her debt.

{28} When a purchaser's misconduct allows him or her to evade or undermine these protections, courts can use their equitable discretion in favor of the debtor. For example, an early United States Supreme Court case upheld an equitable extension when the purchaser's particularly egregious conduct defrauded the debtor by preventing her from realizing that a foreclosure had taken place. *See Graffam v. Burgess,* 117 U.S. 180, 186–87, 6 S.Ct. 686, 29 L.Ed. 839 (1886) (allowing debtor to redeem because of purchaser's misconduct that included purposely preventing debtor from knowing of foreclosure sale until redemption period was over even though purchaser observed debtor expend considerable sums in repairs and improvements to the property, employing individuals to watch debtor's movements in order to break into and take possession of the home in debtor's absence, and removing debtor's personal property). As a result, the debtor was effectively denied the benefits of the redemption period, as she did not know that she had the opportunity to redeem or renegotiate. *Id.* at 187, 6 S.Ct. 686. The Court upheld an extension of the redemption period in equity.

{29} Furthermore, the purchaser in *Graffam* foreclosed on a property worth $10,000 to satisfy the debtor's obligation of just $200. *Id.* at 186, 6 S.Ct. 686. The purchaser then paid $73.10 for the property at the foreclosure sale. *Id.* at 182, 6 S.Ct. 686. Courts commonly view such price discrepancies as indicative of a purchaser's attempt to evade the protections for a debtor discussed above. *See Malvaney v. Yager,* 101 Mont. 331, 54 P.2d 135, 136, 140–42 (1936) (upholding an equitable extension when a 320–acre farm with outbuildings and granaries was mortgaged to secure a debt of $1000, which was a "fraction of its real value"); *see also McDaniel v. Wetzel,* 264 Ill.

212, 106 N.E. 209, 210 (1914) (setting aside a purchase when a property worth $4000 was sold for less than $400 at the sheriff's sale and there were multiple deficiencies in the requirements for sale).

{30} In the above cases, the courts used equity to protect a debtor who was ready, willing, and able to tender the redemption amount in accordance with the statute, but who failed to effect redemption because of the misconduct of a purchaser. *See also Plaza Nat'l Bank,* 106 N.M. at 466, 745 P.2d at 374 (stating that the trial court found that prior to the purchaser's misconduct, the debtor was "ready, willing and able" to pay the redemption amount at the proper time). For example, in *Malvaney,* 54 P.2d at 141–42, the debtor was unable to acquire insurance proceeds that were rightfully his within the redemption period. Had the purchaser not schemed to prevent the debtor from getting the insurance money, the proceeds would have enabled the debtor to tender the redemption amount within the redemption period. The purchaser in *Malvaney* also made reliable assurances to the debtor that he would extend the redemption period if necessary. *Id.* at 141. The Montana Supreme Court characterized this as a situation in which the debtor "has acted upon assurances that the redemption within the statutory time would not be insisted upon, yet, after the period has expired, the mortgagee purchaser seeks to rely upon a strict statutory right." *Id.* at 142.

{31} Similarly, the Utah Supreme Court applied an equitable extension in *United States v. Loosley,* 551 P.2d 506, 508 (Utah 1976). In that case, the debtor had tendered the proper redemption amount to the purchaser one day before the expiration of the redemption period, but the purchaser returned the money seven days after the period expired, making compliance impossible. *Id.* at 507.

■ {32} Conversely, courts will not allow a debtor who is otherwise unable to pay the redemption amount to shield him or herself from losing property by merely asserting purchaser misconduct. In *Wylie v. Amalgamated Trust & Savings Bank,* 74 Ill. App.3d 8, 30 Ill.Dec. 1, 392 N.E.2d 656, 657,

661 (1979), the court affirmed the grant of summary judgment for the purchaser, despite the debtors' allegations that a genuine issue of material fact existed as to whether the purchaser had fraudulently promised to grant an extension of the redemption period. The *Wylie* court held that although one individual agreed that he would "be willing to entertain any proposal" for redemption and another individual "appeared to be amenable" to an extension, these statements were too vague to be considered a promise for an extension. *Id.* at 660 (internal quotation marks omitted). Furthermore, the debtor had furnished no explanation of why he had not secured the money earlier. The court stated, "[w]ithout a satisfactory explanation, the record merely indicates that plaintiffs had until November 14 to redeem and failed to redeem their property." *Id.* Our own courts have noted that "[i]t is effective action, not good intentions, that the [redemption] statute calls for." *Dalton,* 1996–NMCA–041, ¶ 19, 121 N.M. 539, 914 P.2d 1036 (quoting *Richardson,* 35 N.M. at 245, 294 P. at 329).

{33} In the instant case, even if we assume that there was misconduct and deceit and that Debtor relied on Purchaser's assurances that he would come to the closing, none of the factors favoring an equitable extension are present. There is nothing to suggest that Purchaser prevented Debtor from enjoying the extra time to secure funds that the redemption period affords. The strongest evidence of Purchaser's misconduct is the affidavit of the Taos Title company employee, stating that Purchaser "indicated that he was agreeable and would come to the Taos Title Company" for the closing. Even assuming that this amounted to a promise to come to the closing, this does not approach the egregious conduct contemplated in *Graffam.* Debtor was still aware that he had one month to effect redemption, and, as opposed to the situation in *Plaza National Bank,* the amount of money he needed to redeem his property did not change.

{34} Debtor provides no evidence to suggest that the trial court was required to act to prevent an unjust windfall to Purchaser. Debtor contends that the redemption amount, $204,000, was "significantly below

the market value" for the property. However, Debtor does not provide evidence of the market value of the property, so we cannot consider whether the price paid at foreclosure was less than the fair market value. *See State ex rel. Educ. Assessments Sys., Inc. v. Coop. Educ. Servs. of N.M., Inc.,* 110 N.M. 331, 332, 795 P.2d 1023, 1024 (Ct.App. 1990) (stating that the party seeking review has the burden of providing an adequate record to review the issues on appeal). The record reveals that the property at issue was the subject of a mortgage with Chase that secured a debt of $160,000 and that Debtor's debt to Chase was $185,202.57 by the time of foreclosure. Purchaser paid $199,900 for the property at the sheriff's sale. From these facts, we see no indication that the foreclosure sale failed to get adequate value for the property, nor do we see any reason for the trial court to have used its equitable powers to protect Debtor in this respect.

{35} Finally, there is no indication that Debtor was ready, willing, and able to tender the proper amount within the redemption period, notwithstanding Purchaser's misconduct. In contrast to *Malvaney* and *Loosley,* Purchaser's misconduct was apparent to Debtor before the expiration of the redemption period. When Purchaser did not appear at the January 11th closing, there remained a full nine days, or more than one-quarter of the total redemption period, for Debtor to secure alternative financing. Although on appeal Debtor indicates that "it was too late" to obtain funds at this point, the evidence shows that he "did not make further efforts" to obtain the necessary money. Debtor did not request an extension of the redemption period from Purchaser, and his initial petition for redemption did not request an extension of the period from the court.

{36} In fact, nothing in Debtor's arguments indicates that Purchaser prevented him from redeeming his property. On the contrary, Debtor's evidence indicates that it was extremely difficult for him to obtain any financing for redemption, even with the full month available, and that the only lenders he could find were ones who demanded that Debtor place additional conditions on his tender of funds to Purchaser.

{37} Because of the strictness of the redemption statute and the beneficial purposes thereof, we believe that, absent gross disparity between the property's value and the sale price, Debtor must make a threshold showing of some causal connection between Purchaser's alleged misconduct and Debtor's inability to comply with the statute in order to invoke a trial court's exercise of discretion in equity. *See, e.g., Steinour v. Oakley State Bank,* 45 Idaho 472, 262 P. 1052, 1055 (1928) (applying equity when the actions of the purchaser "prevented" the debtor from complying with the statute). Here, that showing would be one that Debtor could have obtained the necessary funds for a proper tender but for Purchaser's misconduct. Absent this showing, we cannot say that there was a genuine issue of material fact as to whether Debtor was entitled to an equitable extension.

{38} In sum, Debtor's situation, while unfortunate, was not one that the redemption statute seeks to prevent. Purchaser's alleged misconduct did not prevent Debtor from availing himself of the full benefits of the statute. Debtor did not show any of the other situations in which a trial court would be entitled to apply equity. Accordingly, we hold that the trial court did not err in denying equitable relief as a matter of law.

**ISSUE THREE: Waiver of Strict Compliance**

{39} Finally, Debtor asserts that Purchaser waived his right to strict compliance with the redemption statute. Debtor did not raise this argument below. We do not review arguments that are raised for the first time on appeal. *Campos Enters., Inc. v. Edwin K. Williams & Co.,* 1998–NMCA–131, ¶ 12, 125 N.M. 691, 964 P.2d 855. Debtor contends that his waiver argument is implicit in the statutory-compliance and equitable arguments he did make below. Therefore, we do not separately consider this argument, and instead we reject the argument for the reasons stated in our discussion of the first two issues above.

**CONCLUSION**

{40} We affirm the trial court's grant of summary judgment in favor of the Purchaser

and its dismissal of Debtor's claims with prejudice.

{41}  IT IS SO ORDERED.

ALARID and SUTIN, JJ., concur.