**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-017

Filing Date: January  21, 2009

Docket No. 27,127

MICK CHAPEL and JENNIFER CHAPEL,

      Plaintiffs/Judgment Creditors-Appellees,

v.

NORMA NEVITT and SUSAN NEVITT,

      Defendants/Judgment Debtors,

and

DAVID DERRINGER,

      Defendant/Judgment Debtor-Appellant.

APPEAL FROM THE DISTRICT COURT OF CATRON COUNTY
John W. Pope, District Judge

Comeau, Maldegen, Templeman & Indall, LLP
Joseph J. Manges
Santa Fe, NM

for Appellees

Gallagher, Casados & Mann, P.C.
Nathan H. Mann
Albuquerque, NM

for Appellant

## OPINION

**FRY, Judge.**

**{1}**     This case arises from a debtor's desire to redeem his property following a foreclosure

proceeding. In resolving the two issues raised on appeal by the debtor, Defendant David Derringer, we first conclude that in the absence of a debtor's compliance with the redemption statute, NMSA 1978, § 39-5-18 (2007), which requires the debtor to petition the district court *and* to deposit the sum of money required by statute, the district court is not required to hold a hearing and issue a certificate of redemption. Second, we hold that equity allows an extension to the redemption period in only two situations, neither of which occurred here, and that a debtor must substantially comply with the redemption statute before equity may be invoked to extend the redemption period. While we hold that equity did not require an extension in this case, we nonetheless affirm the district court's order extending the redemption period and hold that the district court did not err by declining to hold a hearing on the redemption amount required.

## I.    BACKGROUND

{2}    In the words of the district court, "a long and torturous proceeding" between Plaintiffs Mick and Jennifer Chapel and Derringer gave rise to this appeal. The litigation began over thirteen years ago and has resulted in numerous appeals to this Court as well as to the Tenth Circuit Court of Appeals. The proceedings initially arose from a dispute over two dams on Derringer's property that interfered with the Chapels' water rights. Derringer was ultimately ordered to remove the dams, and there is some dispute as to when, if ever, he complied with that order.

{3}    In the course of the underlying litigation, the Chapels obtained three judgments against Derringer: two judgments totaling $80,642.48 in the Seventh Judicial District Court and a judgment of $6,161.20 in federal court. One of the state court judgments also required Derringer to remove the dams from his property and included a penalty of $100 per day until the dams were removed.

{4}    The Chapels filed a petition of foreclosure, and the district court entered an order of foreclosure in 2004. In September 2005, a special master's sale of the property took place at which the Chapels were the sole bidders with a winning bid of $200,000. Following the sale, the special master filed a report delineating the procedures taken to comply with the district court's foreclosure order. This report indicated that the Chapels had made the high bid of $200,000. The report also stated that the Chapels' judgments totaled $230,647.88 on the date of the sale and that the $200,000 bid was sufficient to pay only part of the Plaintiffs' judgments plus the costs of sale, which totaled $648.76, and other costs and fees as allowed. On October 5, 2005, the district court entered an order approving the sale and special master's report confirming the Chapels' $200,000 winning bid on the Derringer property. Derringer did not appeal the order approving the sale of his property.

{5}    Derringer did not voluntarily leave the property after the foreclosure sale was approved. Thus, the Chapels sought and obtained a writ of assistance and on January 11, 2006, the Catron County Sheriff's Department forcibly removed Derringer from the property.

2

**{6}** In the time between the court's issuance of the writ of assistance and Derringer's eviction from the property, Derringer filed three "emergency motions" that asked the court, among other things, to determine the "amount of payment to release all Chapels' liens and other encumbrances against the Derringer real property to clear title for sale under the statutory right of redemption." In these motions, Derringer indicated that he had a buyer for the property but that he had to assure the buyer that there would be clear title free of all encumbrances. Derringer stated that "[t]he buyer had to have a closing with a guarantee of title, with a title binder from the Title company and title insurance for an effective sale." Derringer further stated that "[t]his mandates knowledge of a payment amount to the penny of payment to Chapels and/or this court to release all liens, encumbrances and claims of Special Master's deed against the Derringer property."

**{7}** A few days prior to his eviction from the property, Derringer tendered a check for $2,000, one percent of the purchase price, to the Chapels' attorney and executed a promissory note indicating that he was redeeming his property and would pay the full amount owed during the week of January 9-17, 2006. The Chapels returned the check to Derringer shortly thereafter. Derringer never made another payment to the Chapels.

**{8}** The district court held a hearing on Derringer's emergency motions but declined to address any of Derringer's specific arguments regarding the redemption of the property due to the fact that Judge Pope had presided over all of the previous proceedings, and the judge sitting in his place was unsure if he had the authority to rule in Judge Pope's absence. During this hearing, however, Derringer acknowledged that the statutory amount required to redeem his property was the $200,000 purchase price and that the Chapels would have to go to court to enforce the additional balance they claimed he owed. Derringer also indicated that he would have this amount by the end of the week.

**{9}** The district court then denied all of the emergency motions filed by Derringer. Following that ruling, Derringer filed a motion in response to the Chapels' response to Derringer's emergency motions and stated that "a hearing is still desperately needed to establish the amount of money owed for right of redemption." In that motion, Derringer again noted that "state law stipulates that Derringer has to only pay the amount of Chapels' bid at the auction of September 21, 2005, which was the amount of $200,000, plus only interest on that amount of [ten percent] for the days after [the date of sale]." Derringer then filed a motion to reconsider the denial of his emergency motions.

**{10}** In early 2006, Derringer, who had been pro se, obtained representation and filed an "expedited motion for protection and recovery of personal property," which sought to protect certain personal items that remained on the Derringer property after Derringer was ejected from the property, and an "expedited petition for certificate of redemption," which for the first time sought from the district court a certificate of redemption setting the exact amount owed for redemption and a determination of the date upon which the $100-per-day penalty for violating the terms of the injunction had ended. The district court held a hearing on these motions on March 8, 2006, and indicated that it would issue a ruling in ten days regarding

3

when the injunction had been satisfied and the amount required to redeem the property. Immediately after the court made this statement, however, both of the parties asked for an opportunity to submit written motions regarding the redemption issues and the court agreed. Thus, while nothing in the record reflects that the court ever made a ruling on the redemption issues presented at the March 8 proceeding, we conclude that the court's indication that it would make a ruling in ten days was effectively withdrawn when it allowed the parties to submit written motions regarding the redemption issue.

{11}    Following the hearing, Derringer filed a motion that detailed his plans to retrieve his personal property from the real property and a separate motion that supplemented the petition for a certificate of redemption. In this supplement, Derringer calculated the amount necessary to redeem his property as $191,404.45. The Chapels' response calculated the redemption amount at $248,808.53, plus interest and costs. The difference between the parties' calculations was the result of a dispute as to when the $100-per-day penalty ended. Derringer argues that he satisfied the injunction by removing the dams on May 8, 2004, while the Chapels maintain that the dams remained in existence through the date of the foreclosure sale, September 21, 2005. This dispute results in a difference of about $50,000 in penalties. As we explain more fully below, while this dispute does not affect the amount that Derringer had to pay to redeem his property, it gives rise to Derringer's belief that he was unable to obtain the financing he needed to redeem his property.

{12}    Derringer also filed a motion to extend the statutory redemption period, to obtain a certificate of redemption, and to protect and recover his personal property. The district court heard the matter and, on July 6, 2006, entered an order stating that "the motion to extend [the] redemption period is not well taken and the [c]ourt shall decline to exercise its equitable authority to extend the redemption period." Twenty-two days later, on July 28, 2006, Derringer filed a motion to modify the July 6 order. In the motion to modify, Derringer stated that "it is necessary and appropriate to include language so that an interlocutory appeal may be taken." By this time, Judge Pope was again presiding over the case, and he heard this motion on August 10, 2006. On August 31, 2006, the district court entered an order that set aside the July 6 order denying the motion to extend the redemption period, extended the redemption period for thirty days from August 10, 2006, and set the redemption amount at $248,808 with $191,404.45 to be paid immediately to the Chapels and the remainder to be placed in the court registry pending a further order regarding the exact redemption amount. On September 28, 2006, Derringer filed this appeal challenging the order extending the redemption period. He argues that (1) the district court abused its discretion by failing to rule on his motion for a certificate of redemption, and (2) the additional thirty days did not provide a reasonable amount of time for him to redeem the property.

## II.    JURISDICTION

{13}    As an initial matter, we address the Chapels' argument that this Court does not have jurisdiction over Derringer's appeal. They base this argument on the contention that the

4

district court was without jurisdiction to enter its August 31 order. To reach this result, the Chapels make a number of arguments that we will lay out and then address in turn. The Chapels first argue that the July 6 order denying Derringer's motion to extend the redemption period was a final order. For the reasons below, we agree with this argument. The Chapels then argue that because the July 6 order was a final appealable order, Derringer's July 28 motion to modify the order to include language permitting an interlocutory appeal was untimely. The Chapels base this assertion on the requirement of Rule 1-059(E) NMRA that a motion to alter or amend a final judgment or order be filed within ten days of the final order. We disagree and conclude that Derringer's motion was timely filed. Because we hold that Derringer's motion was timely, we do not address the Chapels' argument that the district court did not have jurisdiction to hold the August 10 hearing. Finally, the Chapels argue that Derringer's motion was deemed denied thirty days after it was filed and that the district court's August 31 order was therefore void. We disagree and hold that the district court had jurisdiction to enter the order.

## A.     The July 6, 2006, Order Was a Final Order

**{14}**     Resolving the Chapels' argument that the district court lacked jurisdiction to enter its August 31 order requires us to first determine if the July 6 order was a final order. Derringer contends that the July 6 order was not final because it did not resolve all questions of fact and law. Specifically, Derringer points out that the issue regarding how to dispose of Derringer's personal property had not yet been resolved. Generally, an order is "not considered final unless all issues of law and fact have been determined and the case disposed of by the [district] court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (internal quotation marks and citation omitted). However, the fact that some issues in a case remain to be decided after the entry of an order or judgment does not always mean that the order is not final. Instead, finality "is to be given a practical, rather than a technical, construction," *id.*, and "[w]here a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein." *Id.* at 238, 824 P.2d at 1040.

**{15}**     The district court's July 6 order denying Derringer's motion to extend the redemption period is just such an order. In practical effect, denying Derringer's request to extend the redemption period completely disposed of the merits of Derringer's case despite the fact that there were two potential collateral issues that remained to be decided—the precise amount of redemption and the disposition of Derringer's personal property. The July 6 order practically disposed of the matter because, having ruled that Derringer's time to redeem the property had expired, resolution of these remaining collateral issues would in no way "moot or revise decisions embodied" within the order denying the extension of the redemption period. *Id.* In fact, once the court ruled that Derringer no longer had any time remaining in which to redeem the property, it was no longer even necessary for the court to determine the precise amount of redemption. Without any right to redeem, the amount required for

5

redemption became irrelevant. Similarly, resolution of how to protect and dispose of Derringer's personal property was merely a collateral issue that would in no way affect the court's order denying the extension of the redemption period. The July 6 order was therefore a final order for purposes of appeal.

**B.      Derringer's Motion to Modify the July 6, 2006, Order Was Not Untimely**

**{16}**    We now consider the timeliness of Derringer's July 28 motion to modify the July 6 order to include language permitting an interlocutory appeal. To the extent the Chapels argue that Derringer's motion was untimely under Rule 1-059, we agree. Rule 1-059(E) states that "[a] motion to alter or amend [a] judgment shall be served not later than ten (10) days after entry of the judgment." Derringer's July 28 motion to modify the order was well outside of the ten-day period following entry of the July 6 order. Thus, if Derringer's motion was a Rule 1-059 motion, it was untimely.

**{17}**    Derringer did not, however, specify under which rule he brought his motion. The Chapels assume that because the motion sought to modify the July 6 order, it should automatically be considered a Rule 1-059 motion. Our precedent does not support this position. Instead, our Supreme Court has previously noted that "[n]omenclature is not controlling" when we determine which rule supports a motion. *Albuquerque Redi-Mix, Inc. v. Scottsdale Ins. Co.*, 2007-NMSC-051, ¶ 10, 142 N.M. 527, 168 P.3d 99 (internal quotation marks and citation omitted). In *Redi-Mix,* our Supreme Court addressed whether a motion for reconsideration filed within ten days of a final order should be considered to have been filed under NMSA 1978, § 39-1-1 (1917), which has an automatic denial provision if the court does not rule on the motion within thirty days, or under the then-applicable version of Rule 1-059(E), which did not have an automatic denial provision. *Redi-Mix, Inc.*, 2007-NMSC-051, ¶ 11. The Court noted that almost every federal circuit to consider the issue has "held that a motion questioning the correctness of a judgment and filed within ten days of judgment [should] be treated as a motion to alter or amend a judgment under Rule 59(e)." *Id.* ¶ 9. Thus, the Court held that because the motion to reconsider was filed within ten days of the final judgment, it was deemed to be a Rule 1-059(E) motion. *Id.* ¶ 10.

**{18}**    Because a motion for reconsideration filed within ten days of the final judgment is deemed to be a Rule 1-059(E) motion, a motion filed outside of the ten-day period should logically be deemed to have been filed under Section 39-1-1, which only requires motions to be filed within thirty days of the final judgment. *See Redi-Mix, Inc.*, 2007-NMSC-051, ¶ 11. Thus, the question becomes whether Derringer's motion to modify the July 6 order was a motion for reconsideration that, under the principles stated by our Supreme Court in *Redi-Mix*, could be timely filed under Section 39-1-1 any time within thirty days of the July 6 order. In order to determine this issue, we look to the language of the order and the relief that it sought.

**{19}**    Derringer's motion was titled "Motion to Modify Order" and stated that "it is necessary and appropriate to include language so that an interlocutory appeal may be taken." Although we conclude that the July 6 order was final, it appears that Derringer, and possibly

even the district court, believed that it was not a final order. In order to act on Derringer's motion and determine whether to include interlocutory appeal language, the district court was required to consider whether "the order or decision involve[d] a controlling question of law as to which there [was] substantial ground for difference of opinion and that an immediate appeal from the order or decision may materially advance the ultimate termination of the litigation." NMSA 1978, § 39-3-4(A) (1999). The district court would have been required to closely consider the question of law presented in the July 6 order and determine whether an appeal would advance the litigation. In addition, by asking the court to allow an interlocutory appeal, Derringer essentially "questioned the correctness" of the court's order, giving the court an opportunity to reconsider the validity of its July 6 order. Thus, Derringer in effect asked the district court to reconsider its July 6 order and determine if an appeal was necessary. Because disposing of the motion required the court to reconsider its July 6 order, the motion is deemed to be a motion for reconsideration that can be filed any time within the thirty-day period specified by Section 39-1-1.

{20}     Derringer's July 28 motion was therefore not an untimely Rule 1-059(E) motion to alter or amend a judgment, as the Chapels argue, but instead it was a motion to reconsider the July 6 order that was timely filed under Section 39-1-1. Consequently, the court acted within its discretion to vacate the July 6 order. *See Laffoon v. Galles Motor Co.*, 80 N.M. 1, 3-4, 450 P.2d 439, 441-42 (Ct. App. 1969) (noting that the "discretion vested in the trial courts in the exercise of control over their judgments . . . is extremely broad").

**C.      The District Court Had Jurisdiction to Hold the August 10, 2006, Hearing and Enter the August 31, 2006, Order**

{21}     Because we hold that Derringer's July 28 motion was a timely motion to reconsider under Section 39-1-1, we need not address the Chapels' argument that the district court lost jurisdiction over the July 6 order thirty days after it was entered. Section 39-1-1 provides that final judgments and orders "shall remain under the control of [the] court[] for a period of thirty days after the entry thereof, and for such further time as may be necessary to enable the court to pass upon and dispose of any motion which may have been filed within such period." Thus, under the plain language of the rule, the court retained jurisdiction beyond the thirty-day statutory period so that it could pass upon and dispose of Derringer's July 28 motion to modify the July 6 order.

{22}     The Chapels finally argue that even if Derringer's July 28 motion to modify the July 6 order was timely, the motion, pursuant to Section 39-1-1, was deemed denied thirty days after the motion was filed. This argument is without merit. Section 39-1-1 provides that "if the court shall fail to rule upon [a] motion within thirty days after the filing thereof, such failure to rule shall be deemed a denial thereof." The statute requires only that the court *rule* on a motion within thirty days, not that it actually enter a final order disposing of the motion. One purpose of an automatic denial provision is to assist with the court's management of its docket by providing a mechanism to help the court dispose of motions that it has not acted upon. *State v. Ratchford,* 115 N.M. 567, 571, 855 P.2d 556, 560 (1993). Requiring a written

7

order within the thirty-day period would not further this purpose and, in fact, "it would impede the court's management of [the] case by effecting a denial of a motion . . . when the court had already orally announced that the motion would be granted." *Id.* The district court here orally ruled on August 10, within the thirty-day period following Derringer's motion to modify the July 6 order, that it was going to extend the redemption period by thirty days. Thus, we hold that the court ruled on the motion for purposes of Section 39-1-1, and therefore the motion was not automatically denied.

**{23}** We hold that the July 6 order was a final order, that Derringer's motion was a timely motion to reconsider, and that the district court timely ruled on the motion before it. Therefore, Derringer's appeal was timely filed after the entry of the August 31, 2006, order, and we have jurisdiction to address the merits of Derringer's appeal.

## III. DISCUSSION

### A. The Trial Court Did Not Err in Declining to Rule on Derringer's Motion for a Certificate of Redemption

**{24}** Derringer argues that the district court erred by not holding a hearing to determine the amount of money necessary to redeem his property and issue a certificate of redemption. In support of this argument, Derringer cites *Western Bank of Las Cruces v. Malooly*, 119 N.M. 743, 750, 895 P.2d 265, 272 (Ct. App. 1995), in which this Court stated that the trial court had "erred by not holding a hearing to determine 'the amount of money necessary for the redemption' in violation of the mandatory language contained in Section 39-5-18(D)." *Malooly*, 119 N.M. at 750, 895 P.2d at 272. However, Derringer's reliance on this case and the redemption statute is misguided, and we hold that the district court did not err in declining to rule on Derringer's motion for a certificate of redemption.

**{25}** Resolution of this issue requires us to interpret the redemption statute, which is a matter of law that we review de novo. *See State v. Padilla*, 2008-NMSC-006, ¶ 7, 143 N.M. 310, 176 P.3d 299 (noting that we review questions of statutory interpretation de novo). The right to redeem foreclosed property "is a statutory right that our courts construe narrowly." *Brown v. Trujillo,* 2004-NMCA-040, ¶ 14, 135 N.M. 365, 88 P.3d 881. In addition, "[w]hen a statute's meaning is clear from its plain language, we must apply the statute as written by the Legislature." *Blancett v. Dial Oil Co.*, 2008-NMSC-011, ¶ 11, 143 N.M. 368, 176 P.3d 1100.

**{26}** The section of the redemption statute relied upon by Derringer and cited in *Malooly*, Section 39-5-18(D), states that a hearing for a certificate of redemption shall be governed by the rules of civil procedure and that at the hearing, "the judge shall determine the amount of money necessary for the redemption, which shall include the money paid at the sale and all taxes, interest, penalties and payments made in satisfaction of liens, mortgages and encumbrances." § 39-5-18(D). The statute also provides that "[a]t the conclusion of the hearing, the district court may order the clerk of the court to issue the certificate of

redemption upon such terms and conditions as it deems just." *Id.* Thus, looking solely at *Malooly* and Section 39-5-18(D), it would appear that the district court in this case was required to hold a hearing to determine the amount of money necessary for Derringer to redeem his foreclosed property. However, Section 39-5-18(D) must be read in conjunction with the entirety of Section 39-5-18. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (noting that "[w]e will construe the entire statute as a whole so that all the provisions will be considered in relation to one another").

**{27}** The first subsection of the redemption statute, Section 39-5-18(A), allows a debtor to redeem foreclosed property

> (1)     by paying to the purchaser, his personal representatives or assigns, at any time within nine months from the date of sale, the amount paid, with interest from the date of purchase at the rate of ten percent a year, together with all taxes, interest and penalties thereon, and all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser, with interest on such taxes, interest, penalties and payments made on liens or mortgages at the rate of ten percent a year from the date of payment; or

> (2)     by petitioning the district court in which the judgment or decree of foreclosure was entered for a certificate of redemption *and by making a deposit* of the amount set forth in Paragraph (1) of this subsection in cash in the office of the clerk of the district court in which the order, judgment or decree under which the sale was made was entered, at any time within nine months from the date of sale.[1]

(Emphasis added.)    The plain language of this statute makes clear that there are two requirements that must be met in order to redeem property if the debtor chooses to redeem under subsection (A)(2) and not pay the purchaser directly. Under subsection (A)(2), the debtor must (1) petition the district court *and* (2) deposit a sum of money in the court registry *within nine months from the date of sale*. Our cases have consistently held that substantial compliance with both statutory requirements is required in order to redeem property. In *Dalton v. Franken Construction Cos.*, 1996-NMCA-041, 121 N.M. 539, 914 P.2d 1036, for example, a debtor deposited an unendorsed cashier's check with the court clerk just days prior to the expiration of the statutory redemption period. We held that because the check was nonnegotiable and therefore not a "cash" deposit as required by the statute, the debtor had failed to substantially comply with the redemption statute. *Id.* ¶ 12. We noted that the

---

[1]The redemption statute was modified slightly by a 2007 amendment. Because this cause of action arose prior to the effective date of the amendment to the statute, our analysis is based upon the language of the statute as it existed prior to the 2007 amendment.

debtor's "failure to timely tender the required payment in cash goes to the core of [the debtor's] obligation under the [redemption] statute" and that "[i]t is effective action, not good intentions, that the statute calls for." *Id.* ¶¶ 14, 19 (internal quotation marks and citation omitted).

**{28}** The holding in *Malooly* that the district court erred by not holding a hearing is not inconsistent with the requirement that a debtor substantially comply with the redemption statute. *Malooly* involved a debtor who *had* complied with both elements of the redemption statute by both filing a petition for redemption *and* depositing the sum of money "which represented [the purchaser's] judicial sale purchase price plus interest at the statutory rate of ten percent for thirty days." 119 N.M. at 746, 895 P.2d at 268. The error stemmed from a dispute about how to distribute the money that had already been deposited because the purchaser claimed that the debtor owed her an additional amount to reimburse her for taxes and insurance premiums. *Id.* at 750, 895 P.2d at 272. Thus, the hearing was necessary to determine how to disburse the deposit that had been made with the court and to determine whether any additional amounts were due to the purchaser, not to determine how much the debtor had to deposit in the first place. *Id.*

**{29}** Similarly, in *Morgan v. Texas American Bank/Levelland,* 110 N.M. 184, 793 P.2d 1337 (1990), our Supreme Court addressed whether a district court had erred in setting the redemption amount at a certain price. While the Court did not directly address the issue before us today, the facts of the case indicate that the district court had held a hearing *after* the debtor had deposited the purchase price of the property in the court registry. *Id.* at 186, 793 P.2d 1339. This was necessary because the purchaser had rejected the debtor's deposit by claiming that a substantially larger amount was owed, and the court had to determine the precise amount required to redeem the property. *Id.*

**{30}** We therefore hold that under the plain language of the redemption statute, a debtor must substantially comply with the requirements of the statute before a hearing on the issuance of a certificate of redemption is necessary. Derringer, unlike the debtors in *Malooly* and *Morgan,* indisputably did not comply with the requirements of Section 39-5-18. While Derringer filed a timely petition for a certificate of redemption, he never deposited any sum of money in the district court registry. In fact, the only attempt at making a payment that Derringer ever made was in January 2006 when he tendered a $2,000 check and a promissory note to the Chapels' attorney. This clearly does not meet the statutory requirement of depositing the purchase price of the property with the district court or paying the entire purchase price directly to the purchaser. The district court therefore did not err by declining to hold a hearing to issue a certificate of redemption.

**B.      Calculation of the Amount Necessary to Substantially Comply With the Redemption Statute**

**{31}** Derringer argues that he was unable to substantially comply with the statute because the amount required to redeem was uncertain and a hearing was necessary to establish the

amount. In support of this, Derringer argues that without precise information regarding the sum required to redeem, he was unable to sell or obtain financing for the property and make the required deposit. This argument, however, is without merit.

**{32}** In this case, there is clearly a dispute regarding the amount of money Derringer owes to the Chapels due to the uncertainty regarding when Derringer satisfied the injunction requiring him to remove the dams from his property. Derringer argues that he satisfied the injunction on May 8, 2004, while the Chapels maintain that the injunction was never satisfied and that the $100-per-day penalty ended when they purchased the property in September 2005. This dispute results in a difference of about $50,000 plus interest in the amounts that the parties claim Derringer owes to satisfy the judgments against him. However, the parties mistakenly believe that the uncertainty regarding the satisfaction of the injunction affects the amount required to redeem the property when in fact this uncertainty only affects the amount of money Derringer owes to the Chapels to satisfy the judgments they have against him. Thus, contrary to Derringer's assertion that "the precise amount necessary to redeem the property cannot be calculated until the [district c]ourt resolves the issue of when the mandatory injunction and $100[-]per[-]day fines ceased," the amount required to substantially comply with the redemption statute is and always has been clear.

**{33}** The redemption statute "should be given its plain, literal meaning" which requires the debtor to pay only the purchase price of the property plus taxes and interest in order to properly redeem the property. *Constr. Eng'g & Mfg. Co. v. Don Adams Mining Co.*, 91 N.M 238, 239, 572 P.2d 1246, 1247 (1977). Under a plain reading of the redemption statute, the amount required to redeem can be broken up into three elements. The first element is "the amount paid [at the foreclosure sale], with interest from the date of purchase at the rate of ten percent a year." § 39-5-18(A)(1). It is undisputed that the Chapels paid $200,000 for the property. This amount was confirmed in both the special master's report of sale and the district court's order approving the sale. Because the statute clearly requires the debtor to pay the purchase price of the property, we reject Derringer's argument that he owed anything less than $200,000. If the foreclosure sale resulted in a surplus, as Derringer alleges, the proper method to obtain that surplus would have been by appealing the order approving the foreclosure sale, not by challenging the redemption amount. *See Speckner v. Riebold*, 86 N.M. 275, 277, 523 P.2d 10, 12 (1974) (per curiam) (holding that an order approving a foreclosure sale is a final order for purposes of appeal). Thus, the amount due in this case under the first element of the redemption statute is $200,000 plus ten percent interest from the date of the sale.

**{34}** The second element required to be included in the redemption amount consists of "all taxes, interest and penalties thereon," that were paid by the purchaser. § 39-5-18(A)(1). This requirement relates solely to taxes on the property, tax penalties, and interest on taxes. Thus, if the Chapels had paid any property taxes on Derringer's property, or if they had paid any penalties for past due taxes, Derringer would have been required to include this amount with his redemption deposit. There is nothing in the record suggesting that the Chapels paid any such taxes or penalties and, if the Chapels had paid any taxes, Derringer could have

11

easily requested that the Chapels provide him with information regarding the tax payments so that he could include this amount in his redemption deposit.

**{35}** The third element required by the statute consists of "all payments made to satisfy in whole or in part any prior lien or mortgage not foreclosed, paid by the purchaser." *Id.* There is nothing in the record to indicate that the Chapels made any payments to satisfy any other liens or mortgages. While the Chapels' calculation of the redemption amount in this case included the deficiency judgment that they had against Derringer, a deficiency judgment is not a "prior lien or mortgage not foreclosed, paid by the purchaser" within the contemplation of Section 39-5-18(A)(1), such that it can be included in the redemption amount. Instead, where there is an outstanding deficiency judgment after a foreclosure sale, the deficiency judgment becomes a "lien on the debtor's real estate." *Constr. Eng'g & Mfg. Co.*, 91 N.M at 240, 572 P.2d at 1248. When the debtor "redeems foreclosed property, [the property] again becomes part of his real estate and [is] thus subject to the judgment lien and foreclosure." *Id.* Following redemption, "[a] foreclosure suit would then be the proper remedy to effect payment of the amount of the deficiency." *Id.* Thus, if the Chapels have a valid deficiency judgment against Derringer, an issue that is not before this Court, and if Derringer had redeemed the property, the proper method to collect that deficiency would be to foreclose on Derringer's property after he redeemed it, not to include the deficiency in the redemption amount.

**{36}** Because the Chapels did not make any tax payments for the Derringer property or pay off any prior liens or mortgages, Derringer had to deposit only $200,000 plus ten percent interest from the date of the sale into the court registry in order to substantially comply with the deposit requirement of the redemption statute. Prior to this appeal, Derringer acknowledged that this was the required redemption amount on multiple occasions, first in an oral statement to the court on January 10, 2006, and again in a written motion filed on January 24, 2006. This is an amount that Derringer could have easily calculated by simply computing interest from the date of purchase to the date the redemption deposit was tendered and, as we explained in *Malooly*, "[w]e see no reason why the right of redemption may not be asserted by tendering a sum calculated to the date of tender, even if the trial court subsequently determines additional sums are due." 119 N.M. at 750, 895 P.2d at 272. If there had been an additional amount due to the Chapels, such as a property tax payment or penalty that the Chapels had paid but that Derringer was unaware of, that would have been resolved at the hearing in which the district court would have issued a certificate of redemption and determined how the deposit was to be disbursed.

**{37}** The redemption statute, as well as our cases applying the redemption statute, clearly indicate that a valid deposit is a prerequisite to the district court's holding a hearing to issue a certificate of redemption. Because the redemption amount was clear, and because Derringer made no deposit with the court, Derringer failed to comply with the redemption statute, and a hearing to obtain a certificate of redemption was unnecessary. Thus, the district court did not err by declining to rule on Derringer's motion for a certificate of redemption.

12

**C. The District Court Did Not Abuse Its Discretion by Extending Derringer's Redemption Period for Thirty Days.**

**{38}** Derringer next argues that the district court abused its discretion by declining to extend the redemption period for more than thirty days. Because extension of the redemption period is an equitable remedy, we review the district court's ruling for abuse of discretion. *See Dalton*, 1996-NMCA-041, ¶ 15. Derringer contends that the thirty-day extension did not give him enough time to redeem his property and that because the court had not yet ruled on his motion for a certificate of redemption, he was unable to redeem. The Chapels argue that the district court did not abuse its discretion because Derringer was never entitled to an extension in the first place. We agree with the Chapels and hold that because Derringer was not even entitled to an extension, the district court did not abuse its discretion by extending the redemption period for only thirty days.

**{39}** The right to redeem property sold at a foreclosure sale is a statutory right that must be exercised within the nine-month period specified in the redemption statute. *See Plaza Nat'l Bank v. Valdez*, 106 NM 464, 466, 745 P.2d 372, 374 (1987). The time allowed for redemption "may not be enlarged by judicial interpretation," but, in equity, the district court has some discretion to extend the time to redeem. *Id.* There are two general situations in which a court may use its equitable power to grant an extension to the redemption period. *Brown*, 2004-NMCA-040, ¶ 21. "In the first type of situation, the debtor fulfills all of the requirements of the redemption statute, but redemption is not complete because of a clerical error or technical mix-up." *Id.* "In the second type of situation, courts look for evidence of fraud, deceit, or collusion to justify the grant of a redemption period extension." *Id.* ¶ 22. A showing of wrongful conduct on the part of the person against whom relief is sought is an "essential predicate for the exercise of the court's discretion" in the second type of situation. *Id.* (internal quotation marks omitted). Derringer argues that he is entitled to an extension under both of these theories, and we address the arguments in turn.

**1. Clerical or Court Error**

**{40}** Derringer first argues that the district court's failure to determine the amount required for redemption and its failure to determine whether a buyer would have clear title to the property are the types of clerical errors for which equity requires an extension of the redemption period. Because we have already held that the court was not required to hold a hearing to determine the redemption amount, we address only Derringer's argument that the court erred by not ensuring that he would be able to transfer clear title to the property to any prospective purchaser or lender. Derringer argues throughout his brief that he was unable to redeem his property because the district court did not make a determination that a buyer would have clear title to his property if he were to redeem it and then sell it to a third party. During the course of this litigation, Derringer introduced some evidence that a lender had conditionally approved a $200,000 loan that Derringer could have used to redeem the property in January 2006 but that the lender needed information regarding the outstanding judgments against Derringer before it could finally approve the loan. He argues that because

13

there was uncertainty regarding the judgments against him, he was unfairly prejudiced in his ability to obtain the funding required to redeem his property and that this prejudice is the type of error contemplated by the first situation in which equity will extend the redemption period.

**{41}** Contrary to Derringer's assertions, redemption of property does not ensure that the title to that property is clear of all liens and encumbrances, and Derringer's inability to provide clear title is not the type of court or clerical error that would entitle him to an equitable extension of the redemption period. In fact, nothing in the redemption statute guarantees that there will be clear title to the property after redemption, nor does the redemption statute require the court to determine the extent of all judgments and liens against a debtor. Instead, the right to redeem foreclosed property merely protects a debtor's right to *try* to obtain financing during the nine-month statutory period so that the debtor can regain possession of the property. *See Brown*, 2004-NMCA-040, ¶ 32. We have consistently rejected attempted redemptions in which debtors make their tender of funds contingent on a clear title. In *Brown*, for example, a debtor argued that he was entitled to an extension because he had "substantially complied with the requirements of the redemption statute" by filing a timely petition for a redemption certificate and placing the funds necessary to redeem the property in escrow with a title company. *Id.* ¶¶ 4-6. However, the debtor had petitioned the court to "waive any requirement of deposit of funds with the [c]ourt because all funds needed to satisfy" the purchaser's costs were available at the title company and could not "be released to [the purchaser] until he signs a QuitClaim deed to [the debtor]." *Id.* ¶ 5. The court rejected the debtor's arguments, noting that the debtor had made his tender of funds conditional upon the purchaser's executing a quitclaim deed to the property. The court explained that "such a conditional tender has been expressly rejected by our Supreme Court." *Id.* ¶ 16. The court therefore held that "[b]y conditionally tendering money to [the p]urchaser and then filing the [p]etition without a cash deposit with the [district] court, [the d]ebtor did not substantially comply with either procedure the Legislature has created" and was not entitled to an extension. *Id.* ¶ 17.

**{42}** Similarly, in *Union Esperanza Mining Co. v. Shandon Mining Co.*, 18 N.M. 153, 135 P. 78 (1913), our Supreme Court explained that in order to effectively redeem property, a debtor cannot impose any conditions upon his tender of money pursuant to the redemption statute. In that case, the debtor had tendered an amount less than what the purchaser claimed was necessary to redeem and conditioned the tender on the purchaser's providing a full release of all debts owed and a deed to the property. *Id.* at 163, 135 P. at 80. The Court held that "a release of all demands would clearly so enlarge the redemption statute as to confer rights clearly not within the contemplation of the Legislature." *Id.* at 166, 135 P. at 81.

**{43}** Here, as in *Brown* and *Union Esperanza Mining Co.*, Derringer seeks to place conditions upon his attempt at redeeming his property. Derringer repeatedly asked the district court to assure any potential lender or purchaser that the property could be obtained free and clear of all outstanding liens and judgments. This was, in effect, a conditional offer of redemption. Derringer conditioned his redemption of the property on the district court's

14

assuring that there was a clear title. The court was in no way obligated to do so, and Derringer's attempt at redemption therefore was not in compliance with the redemption statute. We also note that in both *Brown* and *Union Esperanza Mining Co.*, the debtor had tendered a substantial portion of the money owed, but was still unable to redeem because the tender was conditional. *Brown*, 2004-NMCA-040, ¶ 5; *Union Esperanza Mining Co.*, 18 N.M. at 165, 135 P. at 80. Here, Derringer did not deposit any form of payment, nor did he ever indicate that he was ready and willing to tender any sum of money. Instead, Derringer indicated that he could not even begin looking for financing until there was assurance that a purchaser could have clear title to the property. Thus, Derringer's compliance with the redemption statute was even less than that of the debtors in *Brown* and *Union Esperanza Mining Co.* If a debtor who makes a conditional tender is not entitled to an extension of the redemption period, then clearly a debtor like Derringer, who makes the mere possibility that he could find a willing lender conditional on the assurance of clear title, is not entitled to an extension of the redemption period.

**{44}**     Because the district court was not required or even able to assure that Derringer's property would have clear title after he redeemed it, there was no clerical or court error that might trigger equitable extension of the redemption period. In addition, as we stated in *Brown*, such error can trigger an equitable extension only if "the debtor fulfills all of the requirements of the redemption statute, but redemption is not complete because of a clerical error or technical mix-up." 2004-NMCA-040, ¶ 21. Thus, even if there were court or clerical error, Derringer did not fulfill the requirements of the redemption statute. Consequently, there was no basis for the court to even consider utilizing the first basis for equitably extending the redemption period.

## 2.     Purchaser Misconduct

**{45}**     We turn now to the second basis for equitably extending the redemption period, which is purchaser misconduct. Derringer argues that the Chapels have wrongfully maintained that the obstructions on the Derringer property were not removed and therefore have asserted a significantly higher redemption amount than the amount Derringer believes is necessary to redeem the property. Derringer also claims that the Chapels have "adversely communicated with real estate agents retained by Derringer and potential buyers in efforts to inhibit the marketing and sale of the property." As we explain more fully below, the Chapels' conduct does not rise to the level of misconduct required to trigger an equitable extension to the redemption period.

**{46}**     In *Plaza National Bank*, our Supreme Court allowed an extension of the redemption period because the debtor had been informed by the purchaser that the debtor could redeem the property for $56,803.83. 106 N.M. at 466, 745 P.2d at 374. The debtor then obtained financing that would have allowed full payment of the redemption amount quoted by the purchaser. *Id.* Nine days before the redemption period expired, however, the purchaser paid off a second mortgage on the property, increasing the redemption amount by $27,000. *Id.* The debtor was unable to obtain the additional funds in the short time remaining and sought

15

an extension of the redemption period. *Id.* The court held that although the purchaser's actions were legal, they subjected the debtor to "an extreme and unnecessary burden" that gave the purchaser an "unconscionable advantage" just days before the redemption period would have expired in the absence of an equitable extension. *Id.* at 467, 745 P.2d at 375.

**{47}** This Court expanded on *Plaza National Bank* in *Brown* and explained that "a court properly exercises its equitable discretion to extend the redemption period only when it would further the purposes of the redemption statute." 2004-NMCA-040, ¶ 25. We explained that equity had allowed an extension where a purchaser obtained property for an unconscionably low amount, as in *Graffam v. Burgess*, 117 U.S. 180, 186 (1886), and where the purchaser interfered with the debtor's ability to redeem the property, as in *United States v. Loosley*, 551 P.2d 506, 508 (Utah 1976). *Brown*, 2004-NMCA-040, ¶¶ 29, 31. We held that these principles did not apply in *Brown* because even assuming that there had been misconduct on the purchaser's part, there was "nothing to suggest that [the p]urchaser prevented [the d]ebtor from enjoying the extra time to secure funds that the redemption period affords." *Id.* ¶ 33. We emphasized that "there [was] no indication that [the d]ebtor was ready, willing, and able to tender the proper amount within the redemption period, notwithstanding [the p]urchaser's misconduct." *Id.* ¶ 35. We held that the "[d]ebtor must make a threshold showing of some causal connection between [the p]urchaser's alleged misconduct and [the d]ebtors inability to comply with the statute in order to invoke a [district] court's exercise of discretion in equity." *Id.* ¶ 37.

**{48}** Here, the Chapels' alleged conduct does not rise to the level of misconduct required for the district court to equitably extend the redemption period. Unlike the purchaser in *Plaza National Bank*, the Chapels did nothing to increase the amount required for redemption that unfairly prejudiced Derringer's ability to redeem the property. Although the Chapels and Derringer had differing calculations as to the amount required to redeem the property, as discussed more fully above, the Chapels maintained throughout the entire redemption period that the redemption amount, including all liens they had against Derringer, was $248,808.53 plus interest. While the Chapels may have been mistaken in assuming that Derringer was required to pay the deficiency judgment as part of the redemption payment, this mistake did not in any way interfere with Derringer's ability to redeem his property.

**{49}** In fact, the Chapels' miscalculation may have actually assisted Derringer in obtaining financing had he made adequate efforts to do so. Derringer contends that he could not find a buyer or lender willing to loan him the redemption money because the uncertainty of the judgments against him created a cloud on the title to the property. In Derringer's words, "[a] loan was impossible without being able to tell the lender any amount to clear the lien and without a guarantee of clean title." The Chapels, however, repeatedly informed Derringer that a payment of $248,808.53 would allow him to redeem the property *and* satisfy all of the judgment liens they had against him. Thus, contrary to Derringers' assertion that the Chapels' calculation of the redemption amount was misconduct that precluded him from being able to redeem his property, the Chapels' calculation actually would have assisted

16

Derringer in obtaining financing because the calculation encompassed the amount the Chapels would accept to satisfy the entire judgment and clear the title to the property. Any prospective lender or buyer would have known that the maximum lien on Derringer's property was the $248,808.53 that the Chapels claimed that Derringer owed. To the extent that the Chapels' calculation of the amount needed to satisfy all of the liens differed from Derringer's calculation, this difference was based on a good faith dispute over when Derringer satisfied the injunction to remove the dams from his property and when the $100-per-day penalty ended. It is not misconduct for a judgment lien creditor, like the Chapels, to calculate in good faith the amount the debtor owes to satisfy a judgment. The conduct of the Chapels therefore did not rise to the level of misconduct required by *Brown* and *Plaza National Bank* to equitably extend the redemption period.

**{50}** Finally, other than his bare allegation that the Chapels contacted prospective purchasers of his property and their real estate agents, Derringer has not directed this Court to any evidence in the record, nor are we able to find any evidence in the record, to support the claim that the Chapels interfered with Derringer's attempts to sell his property. Thus, we do not address these arguments.

**{51}** We hold that equitable principles did not require any extension of the statutory period during which Derringer could have redeemed his property. Derringer failed to substantially comply with the redemption statute, there was no clerical or court error that precluded him from complying with the redemption statute, and the Chapels did not engage in any misconduct that precluded Derringer from redeeming his property. The district court therefore did not abuse its discretion by declining to extend the redemption period for more than thirty days. While equity did not require an extension to the redemption period in this case, the court in its discretion determined that a thirty-day extension would be appropriate. Because the court was not required to extend the redemption period at all, we cannot say that it was error to extend the redemption period by only thirty days. Having obtained relief from the district court that equity would not ordinarily have provided, Derringer cannot now complain that the relief was insufficient.

**D. Derringer Failed to Preserve His Arguments Relating to the Form of the August 31, 2006, Order**

**{52}** Derringer makes two additional arguments regarding the district court's August 31, 2006, order. He first alleges that the order contradicted the court's oral ruling at the August 10 hearing and that the order contains internal inconsistencies that make it impossible to determine whether there is clear title to the property. He next alleges that the court failed to comply with Rule 1-058(C) NMRA, which requires that counsel be afforded an opportunity to examine an order before it is signed by the court, and local rules LR7-004, which requires an order to be signed by all counsel appearing, and LR13-402, which requires either a signature of both attorneys or a presentment hearing. The Chapels argue that even if the court erred, Derringer failed to preserve the issues below and therefore he cannot raise

17

them for the first time on appeal.  We agree.

{53}  Where error is alleged in connection with the entry of a judgment or order, such as judgments entered without notice, the remedy is by motion to vacate the judgment. *Moore v. Brannin*, 33 N.M. 624, 625, 274 P. 50, 51 (1929) (noting that "[w]e have held that the remedy in case of a failure to give such notice is by motion to set such judgment or order aside for irregularity").  Derringer did not make a motion to vacate the order in the district court, nor did he raise the alleged irregularity of the order with the district court in any other manner.  It is a basic principle that issues not raised in the district court cannot be raised for the first time on appeal. *Romero v. Sanchez*, 86 N.M. 55, 56, 519 P.2d 291, 292 (1974).  "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987).  Invoking a ruling in district court serves the purposes of (1) allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal; and (2) creating a record from which the appellate court can make informed decisions. *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332.  Here, Derringer did not challenge the district court's August 31 order in any way, and the district court therefore had no opportunity to remedy any alleged inconsistencies in its order.  Consequently, we do not address these on appeal.

**CONCLUSION**

{54}  For the foregoing reasons, we affirm the district court's August 31, 2006, order.
{55}  **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**

Topic Index for *Chapel v. Nevitt*, No. 27,127

CP          Civil Procedure
CP-FO       Final Order

18

**PR**　　　　**Property**
PR-FC　　　Foreclosure
PR-RP　　　Redemption of Property

**RE**　　　　**Remedies**
RE-EQ　　　Equity