## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-027

Filing Date: December 29, 2022

No. A-1-CA-38966

TAL REALTY, INC.,

      Petitioner-Appellee,

v.

ASHOK KAUSHAL,

      Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Judge**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
Albuquerque, NM

for Appellee

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Appellant

### OPINION

**BACA, Judge.**

**{1}** This appeal calls upon this Court to again interpret NMSA 1978, Section 39-5-18 (2007), which allows a party to redeem property sold pursuant to a foreclosure judgment by (1) paying the purchaser "the amount paid at sale, with interest from the date of sale at the rate of ten percent a year," along with certain other expenses, or (2) initiating a judicial redemption by filing a petition for redemption and depositing the above-described amount with the district court clerk. Section 39-5-18(A)(1), (2). In this case, the issue presented is whether the statutory interest of ten percent per year accrues only until the redeeming party deposits the purchase price with the court, or whether interest continues to accrue until the district court enters a final judgment confirming the

redemption. Here, the district court found that interest stopped accruing at the time the redeemer deposited funds with the district court. We affirm for the reasons set forth below.

**BACKGROUND**

**{2}** Appellant, Ashok Kaushal, submitted the winning bid at a judicial foreclosure sale. The district court subsequently entered an order confirming that sale on November 13, 2019. Appellee, TAL Realty, Inc. (TAL), then petitioned for redemption of the property, having acquired the mortgagor's right of redemption through an assignment. Along with filing the petition, TAL deposited funds into the registry of the district court on December 3, 2019, in an amount calculated to cover Kaushal's purchase price plus interest at ten percent per year for the twenty days from November 13 to December 3. TAL moved for summary judgment on its petition the following week, and Kaushal responded, challenging only the interest calculation. The district court heard TAL's motion and entered a final order on March 23, 2020, granting TAL's redemption petition and awarding twenty days of statutory interest. In doing so, the district court found that "interest ceases to run when [the] redeeming party tenders funds into [the court's] registry." In this appeal, Kaushal asserts that he is entitled to interest for 132 days, representing the time from November 13, 2019, to March 23, 2020.

**DISCUSSION**

**I.      Standard of Review**

**{3}** Interpretation of Section 39-5-18 is a legal question that this Court reviews de novo. *See Tucson Elec. Power Co. v. State of N.M. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 6, 456 P.3d 1085. "When construing statutes, our charge is to determine and give effect to the Legislature's intent." *Little v. Jacobs*, 2014-NMCA-105, ¶ 7, 336 P.3d 398 (internal quotation marks and citation omitted). "We begin with the plain meaning of the statute's words and construe its provisions together to produce a harmonious whole." *Rivera v. Flint Energy*, 2011-NMCA-119, ¶ 4, 268 P.3d 525. The text of the statute is the "primary indicator of legislative intent." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361. If a term is not defined in a statute, we construe it giving those words "their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863 (internal quotation marks and citation omitted). "We must also consider the practical implications and the legislative purpose of a statute, and when the literal meaning of a statute would be absurd, unreasonable, or otherwise inappropriate in application, we go beyond the mere text of the statute." *Bishop*, 2009-NMSC-036, ¶ 11.

**{4}** In addition to the text of the statute, we examine "the context in which [the statute] was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Maes v. Audubon Indem. Ins. Grp.*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934; *see also State v. Rivera*, 2004-

NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 ("In other words, a statutory subsection may not be considered in a vacuum." (internal quotation marks and citation omitted)).

## II. Current Operation of Section 39-5-18

{5} Under Section 39-5-18, a mortgagor or a party deriving their rights from a mortgagor has two methods to redeem foreclosed real estate following a judicial sale. The first is a nonjudicial redemption in which the redeeming party directly pays the purchaser "the amount paid at the [foreclosure] sale, with interest from the date of sale at the rate of ten percent a year." Section 39-5-18(A)(1). If the purchaser has paid other listed expenses related to the property, those expenses must be added to the sale price and interest accrues on those expenses. *See id.* Thus, a nonjudicial redemption ultimately compensates the purchaser for both the funds expended on the property and the time value of those funds between the time of their expenditure and the ultimate redemption.

{6} The second is a judicial redemption in which the redeeming party files a petition with the district court and makes "a deposit of the amount set forth" in the preceding paragraph with the district court clerk. Section 39-5-18(A)(2). Apart from directing that the funds deposited with the court should be the "amount set forth" in connection with a nonjudicial redemption, our statutes do not separately describe the method or timing of calculating statutory interest in the context of a judicial redemption. *See id.*

## III. Judicial Redemption and Tender

{7} Before 1931, judicial redemption did not exist in New Mexico, and the redemption of the foreclosed property could be accomplished only by tendering the redemption amount, including interest, directly to the foreclosure purchaser. *See* NMSA 1929, § 117-119 (1909); *Brown v. Trujillo*, 2004-NMCA-040, ¶ 14, 135 N.M. 365, 88 P.3d 881. In a case decided under an early version of the statute, a mortgagor seeking to redeem foreclosed land on the last day of the redemption period who could not locate the foreclosure purchaser deposited the relevant funds with the clerk of the county court to try to preserve his rights. *Richardson v. Pacheco*, 1930-NMSC-111, ¶ 2, 35 N.M. 243, 294 P. 328. On appeal, our Supreme Court held that "payment to the clerk was ineffectual as a redemption" under the existing statute. *Id.* ¶ 4; *see id.* ¶ 8 (noting that, under the statute, one "who waits until the last day to seek out the purchaser takes the risk of missing him"); *see also First State Bank of Taos v. Wheatcroft*, 1931-NMSC-047, ¶ 13, 36 N.M. 88, 8 P.2d 1061 (stating that "[i]n many jurisdictions," redemption could be accomplished by paying "the official making the sale, or . . . the clerk of the court," but that in New Mexico law there was "no such provision"). The next year, the Legislature amended the redemption process to incorporate the judicial redemption option at issue in this case. *See* 1931 N.M. Laws, ch. 149, § 2.

{8} That option requires, along with petitioning for redemption, that the redeeming party deposit funds in the district court registry, just as the mortgagor in *Richardson* had attempted. 1930-NMSC-111, ¶ 2. Since the addition of that option, our cases applying

Section 39-5-18 have generally described a redeeming party's deposit of funds with the court as a tender of payment equivalent to the direct tender of payment contemplated by the statutes in existence before 1931. *See Dalton v. Franken Constr. Cos.*, 1996-NMCA-041, ¶¶ 12, 14, 121 N.M. 539, 914 P.2d 1036 (noting that an attempt to deposit an unendorsed cashier's check "was in effect no cash tender"); *W. Bank of Las Cruces v. Malooly*, 1995-NMCA-044, ¶¶ 28-29, 119 N.M. 743, 895 P.2d 265 (describing funds deposited in the court's registry as a tender of the amount due); *Morgan v. Tex. Am. Bank/Levelland*, 1990-NMSC-058, ¶ 4, 110 N.M. 184, 793 P.2d 1337 (describing a deposit of funds as a "tendered redemption"); *Leonard Farms v. Carlsbad Riverside Terrace Apartments, Inc.*, 1974-NMSC-041, ¶ 3, 86 N.M. 241, 522 P.2d 576 (describing deposited funds as "a proper tender in good faith"); *Chapel v. Nevitt*, 2009-NMCA-017, ¶ 36, 145 N.M. 674, 203 P.3d 889 (holding that the amount of interest required for the deposit into the court registry can be easily calculated "by simply computing interest from the date of purchase to *the date the redemption deposit was tendered*" (emphasis added)); *see also Chapel*, 2009-NMCA-017, ¶ 36 (indicating that the required tender is "a sum calculated to the date of tender" (internal quotation marks and citation omitted)). The deposit contemplated by Section 39-5-18(A)(2) accomplishes the same purposes as a direct tender. Indeed, the deposit of funds into the court registry appears to meet the generally accepted definition of a tender of payment. *See Tender*, *Black's Law Dictionary* (11th ed. 2019) (defining "tender" as "an unconditional offer of money or performance to satisfy a debt or obligation"); *Brown v. Fin. Sav.*, 1992-NMSC-025, ¶ 9, 113 N.M. 500, 828 P.2d 412 (same).

**{9}**     Like any other tender of payment, a deposit of funds with the court registry establishes both the redeeming party's willingness to pay the redemption amount and that party's immediate ability to pay the redemption amount. *See Miller v. Johnson*, 1998-NMCA-059, ¶ 21, 125 N.M. 175, 958 P.2d 745 (describing "[t]ender" as "an offer to perform coupled with the present ability of immediate performance, so that the obligation could be satisfied but for the other party's refusal to cooperate"). Thus, a tender of payment amounts to performance of an obligation so much that consummation of the contemplated transaction only depends on the other party accepting that performance. *Id.*

**{10}**     As a result, it is a nearly universal rule that the accrual of fees, penalties, or interest arising from nonpayment of an obligation ceases upon tender of payment:

> A lawful, bona fide tender of the amount due stops the accrual of further interest. In some jurisdictions, the rule is that a tender, to have this effect, must be kept good and must be continuing. To stop the running of interest, the amount tendered must be sufficient to include the whole amount due from the debtor.

74 Am. Jur. 2d *Tender* § 38 (2022) (footnotes omitted); *see* 74 Am. Jur. 2d *Tender* § 39 (2022) (noting tender generally stops the accrual of fees and costs). In the mortgage redemption context, the majority rule holds that a "proper and sufficient tender stops the running of interest, although a redemptioner who fails to bring the tendered money into

court at the time of suit, as required by statute, is chargeable with interest from that time." 59A C.J.S. *Mortgages* § 1475 (2022) (footnote omitted); *cf. Tondre v. Garcia*, 1941-NMSC-042, ¶ 38, 45 N.M. 433, 116 P.2d 584 (holding that the tender of property taxes "prevents interest or penalties from thereafter accruing on the amount tendered").

**{11}** Notwithstanding that majority rule, Kaushal argues that statutory interest in New Mexico should accrue until the court approves the redemption. In doing so, he directs our attention to a paragraph from *Morgan*, which explains that

> the party seeking redemption may withdraw money tendered to the court or the purchaser until the tender is accepted. Interest on the purchase price ceases to run when the party seeking redemption validly tenders the redemption price to the purchaser.

*Morgan*, 1990-NMSC-058, ¶ 17 (citation omitted). Accordingly, Kaushal argues, the tender is not "complete" until the district court approves the redemption and orders the money be paid to the purchaser. Kaushal emphasizes the reference to a tender "to the court or the purchaser" followed by the holding that accrual of interest ceases upon a valid tender "to the purchaser." Kaushal asserts that *Morgan* is describing two tenders— one to the court and another to the foreclosure purchaser, which occurs when the court approves the redemption. Based on this assertion, Kaushal argues that interest continues to accrue until the court enters an order or judgment approving the redemption.

**{12}** Kaushal misreads *Morgan*. In a redemption following foreclosure, there is only one tender, though it can be made in two ways. The redeeming party can tender payment directly to the foreclosure purchaser, or the redeeming party can achieve the same by depositing the relevant funds into the district court registry, as described in the first sentence quoted above from *Morgan*. *See* § 39-5-18(A)(1), (2) (authorizing both payment to the purchaser and deposit with the court). In either case, the actions of the redeeming party accomplish what is commonly understood to be a tender of payment. *See Leonard Farms*, 1974-NMSC-041, ¶ 3 (describing the deposit of redemption funds as "a proper tender"). As a result, interest stops accruing at that time, as described in the second sentence quoted from *Morgan*. In most cases, the tender itself will also place the foreclosure purchaser in a position to accept the offer of payment, thereby consummating the transaction and obviating the need for any further accumulation of interest. Alternatively, the purchaser can reject the tender, requiring a court to resolve the parties' dispute.

**{13}** In a judicial redemption like this case, that resolution will ultimately take the form of a judgment disposing of the pending petition to redeem the foreclosed property. We see no reason that the calculation of interest contained in such a judgment should deviate from the majority rule holding that interest stops accruing upon a proper tender. Thus, where a deposit under Section 39-5-18(A)(2) consists of a "proper and sufficient tender," there should be no further accrual of interest following the deposit. 59A C.J.S. *Mortgages* § 1475.

**{14}** To have this effect, however, the tendered funds must be sufficient to cover the entire redemption obligation:

> To stop the running of interest, the amount tendered must be sufficient to include the whole amount due from the debtor. Only when a tender is unconditional will interest toll on an obligation, and for the tender to be unconditional, it must be the actual production of a sum not less than the amount due on a specific debt or obligation.

74 Am. Jur. 2d *Tender* § 38 (footnote omitted); *see Chapel*, 2009-NMCA-017, ¶ 36. Thus, where the amount due is in dispute and the redeeming party deposits a sum ultimately found to be less than the amount due, the final judgment on a redemption petition may include the accrual of additional interest, as occurred in *Malooly*, 1995-NMCA-044, ¶¶ 30-32. In *Malooly*, this Court held that the redeeming party's deposit omitted taxes paid by the purchaser that were reimbursable under Section 39-5-18. *Malooly*, 1995-NMCA-044, ¶ 30. Under the facts of that case, we concluded that the purchaser was entitled to statutory interest running from the foreclosure sale until the judgment confirming redemption. *Id.* In doing so, we explicitly relied on the fact that the deposit accompanying the redemption petition "did not tender the full amount due" to the foreclosure purchaser. *Id.* ¶ 29; *see* 59A C.J.S. *Mortgages* § 1475 (noting that a party failing to deposit a "proper and sufficient tender" is chargeable with interest from that time).

**{15}** Unlike *Malooly*, however, this case involves no dispute over the redemption amount TAL deposited in connection with its redemption petition. Because Kaushal's sole argument below was that interest should continue to accrue on the amount after it was deposited, there has never been any dispute that the amount tendered was insufficient to cover the amount due on the date it was deposited with the court. As a result, there appears to be no basis for deviation from the general rule that an unconditional tender of funds sufficient to satisfy a debt stops the accrual of further interest on the outstanding debt. We, therefore, conclude that the district court correctly found that statutory interest ceased accruing following TAL's deposit of the redemption funds into the court registry.

**CONCLUSION**

**{16}** We affirm the judgment of the district court approving the redemption of the foreclosed property and awarding twenty days of statutory interest under Section 39-5-18.

**{17}** IT IS SO ORDERED.

**GERALD E. BACA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**